Paul ROMERO, Plaintiff–Appellee,

v.

Damon FAY, Bob Stover, Chief of Police, Defendants–Appellants,

and

Albuquerque, City of; John Doe, Albuquerque Police Officers, Defendants.

No. 94–2042.

United States Court of Appeals, Tenth Circuit.

Jan. 25, 1995.

John G. Travers (James R. Toulouse on the briefs) of Toulouse & Associates, Albuquerque, NM, for plaintiff-appellee.

Tila Fleming Hoffman, Albuquerque, NM, for defendants-appellants.

Before TACHA, McKAY, and BALDOCK, Circuit Judges.

BALDOCK, Circuit Judge.

Defendants appeal the district court's denial of summary judgment in Plaintiff's 42 U.S.C. § 1983 action. We have jurisdiction under 28 U.S.C. § 1291, and we reverse.

The record before us reveals the following. On March 29, 1991 Plaintiff and an acquaintance, Anthony Perry, went to a bar in Albuquerque where they met David Douglas and Stella Guiterrez. After a dispute broke out in the parking lot between Douglas and Perry, the four returned to Plaintiff's apartment at 1:00 a.m. Several people were at Plaintiff's apartment, including Adrian Campos, David Benavidez, James Madrid, Manuel Duran, Loreza Lopez (Plaintiff's sister), Monica Montoya, and Cindy Blea. At the apartment, Douglas, Perry, and David Benavidez began arguing over Stella Guiterrez, Perry's former girlfriend. David Benavidez flashed

a gun and said that someone was going to get killed. David Douglas, Stella Guiterrez, Adrian Campos, and Manuel Duran left the apartment. As Douglas drove off, David Benavidez attempted to shoot at his truck but was unable to do so because Douglas drove off in the opposite direction. Later, David Benavidez, Anthony Perry, and James Madrid left the apartment around 2:00 a.m. After they left, Plaintiff went to bed where he remained until 7:00 a.m. Loreza Lopez, Monica Montoya, and Cindy Blea remained in the apartment with Plaintiff through the night.

At approximately 3:00 a.m. David Douglas went to the door of his residence in response to a knock, stepped out, and was shot and killed. Defendant Officer Fay investigated the murder and interviewed Stella Guiterrez and Manuel Duran. They implicated Plaintiff, although it is unclear how. Approximately four hours later, between 7:30 and 8:00 a.m., Defendant Fay arrested Plaintiff without a warrant at his place of work for the murder of David Douglas.

After he was taken into custody, Plaintiff informed Defendant Fay that he was innocent, and that he had a complete alibi. Plaintiff stated that Loreza Lopez, Monica Montoya, and Cindy Blea would establish that he was asleep in bed when Douglas was killed. Plaintiff also informed Defendant Fay of the events of the preceding night, including that a number of people at his apartment witnessed David Benavidez try to start a fight with David Douglas approximately two hours before he was killed. Defendant Fay refused Plaintiff's offer of names of alibi witnesses, and stated that the witnesses were of little significance because they would lie to protect Plaintiff. Defendant Fay did not interview Plaintiff's alibi witnesses, nor did he interview the individuals present in Plaintiff's apartment who saw Benavidez attempt to start a fight with Douglas.

On April 17, 1991, nineteen days after the arrest, Manuel Duran, Stella Guiterrez, and Defendant Fay testified before the grand jury, which indicted Plaintiff for first degree murder, or in the alternative, felony murder. Defendants imprisoned Plaintiff for approxi-mately three months, during which time Plaintiff and his attorney protested his innocence. Ultimately, Plaintiff was released from jail. The prosecutors filed a nolle prosequi on August 27, 1991.

On August 20, 1993, Plaintiff brought a § 1983 action against Defendants for violations of his Fourth and Fourteenth Amendment rights and state constitutional rights arising from the arrest and imprisonment. Defendants Fay and Stover moved for summary judgment based on qualified immunity. In his response, Plaintiff asserted that Defendants were not entitled to qualified immunity because they had violated clearly established law of which a reasonable police officer would have known. Specifically, Plaintiff contended Defendants violated his federal constitutional rights by: (1) arresting Plaintiff without probable cause pursuant to an unreasonable pre-arrest investigation; (2) conducting an unreasonable post-arrest investigation; (3) insufficiently staffing the Violent Crimes Unit of the Albuquerque Police Department; (4) falsely imprisoning Plaintiff; and (5) maliciously prosecuting Plaintiff in violation of New Mexico law.

The district court denied summary judgment, and ruled that Defendants were not entitled to qualified immunity. Specifically, the district court reasoned that Plaintiff had established that an arrest without probable cause violates the Fourth Amendment, and that the continuation of a lawful arrest is invalid when the police discover facts which negate probable cause. In viewing the disputed facts in the light most favorable to Plaintiff, the district court ruled that Plaintiff had shown Defendants violated clearly established law by arresting him without probable cause. Because the district court concluded that Plaintiff had carried his burden of demonstrating Defendants violated clearly established law, the court shifted the burden to Defendants to show the absence of a material factual dispute. The court ruled that Defendants failed to meet that burden because Defendant Fay "asserts that he had probable cause to arrest [Plaintiff] based on individual interviews, but provides me with no factual information to support that assertion. [Therefore] material facts remain in dispute."

Thus, the district court denied Defendants qualified immunity.

The district court did not determine whether Defendants were entitled to qualified immunity on Plaintiff's claims for an unreasonable post-arrest investigation, inadequate staffing, false imprisonment, and malicious prosecution. This appeal followed.

On appeal, Defendants argue that the district court erred in denying them qualified immunity. Specifically, Defendants argue they are entitled to qualified immunity on all of Plaintiff's claims because Plaintiff failed to show that: (1) Defendants arrested Plaintiff without probable cause; (2) clearly established law guaranteed Plaintiff a particular type of post-arrest investigation; (3) clearly established law required Defendant Stover to staff the Albuquerque Police Department in a particular way; (4) Defendants' refusal to release Plaintiff when he repeatedly protested his innocence constituted false imprisonment; and (5) Defendant Fay's failure to have the charges dismissed amounted to malicious prosecution.

We review the district court's denial of qualified immunity on summary judgment de novo. *Walter v. Morton,* 33 F.3d 1240, 1242 (10th Cir.1994). "Under the summary judgment standard, we review the evidence in the light most favorable to the nonmoving party." *Bisbee v. Bey,* 39 F.3d 1096, 1100 (10th Cir. 1994). However, "[w]e review summary judgment decisions involving a qualified immunity defense somewhat differently than other summary judgment rulings." *Hannula v. City of Lakewood,* 907 F.2d 129, 130 (10th Cir.1990); *accord Hovater v. Robinson,* 1 F.3d 1063, 1066 (10th Cir.1993); *Woodward v. City of Worland,* 977 F.2d 1392, 1396–97 (10th Cir.1992).

■ The Supreme Court recently clarified the analytical inquiry a district court must conduct when a claim of qualified immunity is raised on summary judgment. *See Siegert v. Gilley,* 500 U.S. 226, 231–33, 111 S.Ct. 1789, 1792–94, 114 L.Ed.2d 277 (1991). "To reach the question of whether a defendant official is entitled to qualified immunity, a court must first ascertain whether the plaintiff has sufficiently asserted the violation of a constitutional right at all." *Martinez v.*

*Mafchir,* 35 F.3d 1486, 1490 (10th Cir.1994) (citing *Siegert,* 500 U.S. at 231–32, 111 S.Ct. at 1792–93). This requires the district court to "first determine whether plaintiff's allegations, if true, state a claim for a violation of a constitutional right that was clearly established when defendant acted." *Bisbee,* 39 F.3d at 1100 (citing *Siegert,* 500 U.S. at 232, 111 S.Ct. at 1793). "Decision of this purely legal question permits courts expeditiously to weed out suits which fail the test without requiring a defendant who rightly claims qualified immunity to engage in expensive and time consuming preparation to defend the suit on its merits." *Siegert,* 500 U.S. at 232, 111 S.Ct. at 1793. "Whether an asserted federal right was clearly established at a particular time ... presents a question of law ... [that] must be resolved de novo on appeal." *Elder v. Holloway,* —— U.S. ——, ——, 114 S.Ct. 1019, 1023, 127 L.Ed.2d 344 (1994) (citation omitted).

■ In order to carry his burden, the plaintiff must do more than identify in the abstract a clearly established right and allege that the defendant has violated it. *Hannula,* 907 F.2d at 131. Rather, the plaintiff must articulate the clearly established constitutional right and the defendant's conduct which violated the right with specificity, *Pueblo Neighborhood Health Ctrs. v. Losavio,* 847 F.2d 642, 645 (10th Cir.1988), and "demonstrate a 'substantial correspondence between the conduct in question and prior law ... establishing that the defendant's actions were clearly prohibited.'" *Hovater,* 1 F.3d at 1066 (quoting *Hannula,* 907 F.2d at 130). "Unless such a showing is made, the defendant prevails." *Losavio,* 847 F.2d at 646; *see also Hannula,* 907 F.2d at 131. "Once the plaintiff has sufficiently alleged the conduct violated clearly established law, then the defendant bears the burden, as a movant for summary judgment, of showing no material issues of fact remain that would defeat the claim of qualified immunity." *Walter,* 33 F.3d at 1242; *see also* Fed.R.Civ.P. 56(c). With these principles in mind, we address each of Defendants' arguments in turn.

I.

Defendants first contend the district court erred by denying them qualified immunity on

Plaintiff's wrongful arrest claim. Specifically, Defendants argue they were entitled to summary judgment based on qualified immunity because Plaintiff failed to carry his burden of showing that Defendant Fay arrested Plaintiff without probable cause in violation of the Fourth Amendment.

■ We analyze the constitutionality of a warrantless arrest under the probable cause standard. *Beck v. Ohio,* 379 U.S. 89, 91, 85 S.Ct. 223, 225–26, 13 L.Ed.2d 142 (1964); *Jones v. City and County of Denver,* 854 F.2d 1206, 1208–10 (10th Cir.1988). A police officer may arrest a person without a warrant if he has probable cause to believe that person committed a crime. *E.g., Tennessee v. Garner,* 471 U.S. 1, 6–8, 105 S.Ct. 1694, 1699, 85 L.Ed.2d 1 (1985). "Probable cause exists if facts and circumstances within the arresting officer's knowledge and of which he or she has reasonably trustworthy information are sufficient to lead a prudent person to believe that the arrestee has committed or is committing an offense." *Jones,* 854 F.2d at 1210; *see also Gerstein v. Pugh,* 420 U.S. 103, 111–12, 95 S.Ct. 854, 861–62, 43 L.Ed.2d 54 (1975); *Beck,* 379 U.S. at 91, 85 S.Ct. at 225. When a warrantless arrest is the subject of a § 1983 action, the defendant arresting officer is "entitled to immunity if a reasonable officer could have believed that probable cause existed to arrest" the plaintiff. *Hunter v. Bryant,* 502 U.S. 224, 228, 112 S.Ct. 534, 537, 116 L.Ed.2d 589 (1991); *see also Anderson v. Creighton,* 483 U.S. 635, 641, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987); *Jones,* 854 F.2d at 1210. "Even law enforcement officials who 'reasonably but mistakenly conclude that probable cause is present' are entitled to immunity." *Hunter,* 502 U.S. at 227, 112 S.Ct. at 536 (quoting *Anderson,* 483 U.S. at 641, 107 S.Ct. at 3039).

■ Applying these principles to the instant case, we conclude the district court erred by finding that Plaintiff had carried his burden of showing that Defendant Fay arrested him without probable cause in violation of the Fourth Amendment.[1] To defeat qualified immunity on his wrongful arrest claim, Plaintiff had the burden at summary judgment to assert a violation of his Fourth Amendment rights. *E.g., Siegert,* 500 U.S. at 231–33, 111 S.Ct. at 1792–94. Defendant Fay stated in his affidavit that he interviewed Manuel Duran and Stella Guiterrez and that he based probable cause to arrest Plaintiff on their statements. Thus, Plaintiff's burden required him to show that the statements supplied by Manuel Duran and Stella Guiterrez did not constitute reasonably trustworthy information sufficient to lead a prudent police officer to conclude that Plaintiff murdered David Douglas. *See Hunter,* 502 U.S. at 228–29, 112 S.Ct. at 537; *Walter,* 33 F.3d at 1242; *Jones,* 854 F.2d at 1210. Here, Plaintiff failed to show that the information known to Defendant Fay did not establish probable cause. Indeed, the record is completely silent on this point.

■ Nevertheless, Plaintiff contends that regardless of whether the statements by Duran and Guiterrez supplied probable cause for Defendant Fay to arrest Plaintiff, under clearly established law a reasonable police officer would have investigated his alibi witnesses before arresting him, and the exculpatory information possessed by them would have negated the probable cause to arrest. We disagree.

First, the cases cited by Plaintiff do not support his broad proposition that a police officer who interviews witnesses and concludes probable cause exists to arrest violates the Fourth Amendment by failing to investigate the defendant's alleged alibi witnesses. Instead, the cases state that the probable cause standard of the Fourth Amendment requires officers to reasonably interview witnesses readily available at the scene, investigate basic evidence, or otherwise inquire if a crime has been committed at

---

1. We note that in a criminal case, the burden rests on the government to establish probable cause in support of a warrantless arrest. *E.g., Gerstein,* 420 U.S. at 111–16, 95 S.Ct. at 861–64. The instant case, however, involves the validity of a warrantless arrest under civil law pursuant to § 1983. Thus, the burden rests on Plaintiff to demonstrate that the statements by Duran and Guiterrez did not constitute reasonably trustworthy information. *E.g., Walter,* 33 F.3d at 1242.

all before invoking the power of warrantless arrest and detention.[2]

In addition, the only case Plaintiff cites specifically involving an arresting officer's failure to investigate alibi witnesses does not support his position. In Clipper v. Takoma Park, Md., 876 F.2d 17 (4th Cir.1989), the Fourth Circuit upheld a jury verdict in a § 1983 action for the wrongful arrest and detention of the plaintiff during a bank robbery investigation. The court ruled that the jury could have concluded that the police officer acted unreasonably and therefore arrested the plaintiff without probable cause because he failed to view the bank surveillance film of the robbery, ignored a witnessing officer's comment that he did not think the plaintiff was the robber, and failed to interview the plaintiff's alleged alibi witnesses. Id. at 19–20. The Fourth Circuit noted, however, that the defendant officer's failure to interview the plaintiff's alibi witnesses did not, by itself, render the arrest wrongful. "We would not suggest that [defendant's] failure to investigate the leads that [plaintiff] provided was, in itself, sufficient to negate probable cause." Id. at 20. Instead, the court concluded that the cumulative effect of the officer's unreasonable conduct during the investigation rendered "a sufficient evidentiary base to sustain the verdict upon post-trial motions and on appeal." Id.

Clipper illuminates Plaintiff's failure to carry his burden of alleging facts which show Defendant Fay arrested him without probable cause. Significantly, the plaintiff in Clipper established facts showing that the defen-dant officer acted unreasonably at the time of the arrest by ignoring information in his knowledge—the witnessing officer's statement that he did not think the plaintiff committed the crime—and failed to examine fundamental evidence—the bank surveillance film. Thus, the plaintiff in Clipper demonstrated that the facts and circumstances known to the defendant officer did not constitute reasonably trustworthy information sufficient to lead a prudent officer to believe that the plaintiff had committed the bank robbery.

In contrast, in the instant case Plaintiff does not contend Defendant Fay failed to investigate , fundamental evidence at the crime scene. Nor does Plaintiff argue that Defendant Fay acted unreasonably based on information known to him at the time of the arrest supplied by Duran and Guiterrez. Indeed, Plaintiff supplied neither the district court nor this court with information regarding the statements made by Duran and Guiterrez. Consequently, Plaintiff has failed to carry his burden of showing that Defendants arrested him without probable cause.

In sum, we reject Plaintiff's contention that Defendant Fay's failure to contact his alleged alibi witnesses in itself amounted to a constitutional violation that rendered the arrest without probable cause. Defendant Fay's failure to investigate Plaintiff's alleged alibi witnesses did not negate the probable cause for the warrantless arrest in the absence of a showing that Defendant Fay's initial probable cause determination was it-

2. See Clipper v. Takoma Park, Md., 876 F.2d 17, 19–20 (4th Cir.1989) (officer lacked probable cause to arrest plaintiff in bank robbery case where officer ignored witnessing officer's comment that he was not sure plaintiff was robber, failed to view the surveillance film from the robbery, and failed to interview alibi witnesses); Sevigny v. Dicksey, 846 F.2d 953, 956–58 (4th Cir.1988) (officer lacked probable cause to arrest where he unreasonably failed to interview witness at scene of automobile accident who would have corroborated plaintiff's version of story); Wagenmann v. Adams, 829 F.2d 196, 206–09 (1st Cir.1987) (officers lacked probable cause to arrest plaintiff for disturbing the peace based solely on unsubstantiated rumor and hearsay without first determining if crime had been committed at all); BeVier v. Hucal, 806 F.2d 123, 128 (7th Cir.1986) (officer lacked probable cause to arrest parents for child neglect where he unreasonably failed to interview parents, baby-sitter, and other witnesses at scene to determine if offense had been committed at all); Moore v. Marketplace Restaurant, Inc., 754 F.2d 1336, 1345–47 (7th Cir.1985) (officers' failure to interview plaintiffs to determine if offense had been committed at all before arresting them for theft of restaurant services presented jury question whether facts supplied probable cause to arrest); Lusby v. T.G. & Y. Stores, Inc., 749 F.2d 1423, 1432 (10th Cir. 1984) (officer lacked probable cause to arrest plaintiff for shoplifting by unreasonably refusing to interview cashier at scene who would have confirmed plaintiff had paid for alleged stolen sunglasses), vacated on other grounds sub nom. City of Lawton, Okla. v. Lusby, 474 U.S. 805, 106 S.Ct. 40, 88 L.Ed.2d 33 (1985), aff'd after reconsideration, 796 F.2d 1307 (10th Cir.), cert. denied, 479 U.S. 884, 107 S.Ct. 275, 93 L.Ed.2d 251 (1986).

self unreasonable. *See id.* Once Defendant Fay concluded based on the facts and information known to him that probable cause existed to arrest Plaintiff for the murder of David Douglas, his failure to question Plaintiff's alibi witnesses prior to the arrest did not negate probable cause.[3] Thus, Defendant Fay's failure to investigate Plaintiff's alibi witnesses prior to arrest did not constitute a constitutional violation.

We therefore hold that Plaintiff failed to allege facts and law in his response to Defendants' motion for summary judgment that state a claim for a violation of a constitutional right. Specifically, Plaintiff failed to show that the statements of Duran and Guiterrez did not constitute reasonably trustworthy information sufficient to lead a prudent officer to believe he murdered David Douglas, nor did Defendant Fay's failure to investigate his alibi witnesses amount to a constitutional violation. The district court, therefore, erred in shifting the burden to Defendants and in denying them qualified immunity on Plaintiff's claim of wrongful arrest without probable cause. *See Siegert,* 500 U.S. at 232, 111 S.Ct. at 1793; *Bisbee,* 39 F.3d at 1100.

## II.

■ Defendants next contend the district court erred in denying them qualified immunity on Plaintiff's claim for an unreasonable post-arrest investigation. Specifically, Defendants argue that Plaintiff failed to carry his burden of demonstrating that he had a clearly established right to a reasonable post-arrest investigation.[4] We need not reach

this issue, however, because we conclude Plaintiff failed to allege conduct which amounted to a constitutional violation.

The district court denied Defendants qualified immunity on Plaintiff's claim of an unreasonable post-arrest investigation without conducting the inquiry mandated by *Siegert.* Under *Siegert,* the district court should have first ascertained whether Plaintiff sufficiently asserted facts in his complaint and response to Defendants' motion for summary judgment that established the violation of a constitutional right at all. *Siegert,* 500 U.S. at 231–32, 111 S.Ct. at 1792–93; *Mafchir,* 35 F.3d at 1490.

■ In order to succeed on his claim of an unreasonable post-arrest investigation in violation of his Fourteenth Amendment rights, Plaintiff must assert facts that, at a minimum, demonstrate Defendants acted with deliberate or reckless intent. *E.g., Davidson v. Cannon,* 474 U.S. 344, 347–48, 106 S.Ct. 668, 670–71, 88 L.Ed.2d 677 (1986); *Webber v. Mefford,* 43 F.3d 1340, 1342 (10th Cir.1994) ("[A] government official violates an individual's Fourteenth Amendment rights by injuring his or her life, liberty, or property interest with deliberate or reckless intent."); *Medina v. City and County of Denver,* 960 F.2d 1493, 1496 (10th Cir.1992) (citing cases). Allegations that a police officer acted negligently do not state a claim for a Fourteenth Amendment violation actionable under § 1983. *See Daniels v. Williams,* 474 U.S. 327, 333, 106 S.Ct. 662, 666, 88 L.Ed.2d 662 (1985); *Davidson,* 474 U.S. at 347–48, 106 S.Ct. at 670–71; *Webber,* 43 F.3d at 1342.

---

3. *See Marx v. Gumbinner,* 905 F.2d 1503, 1507 n. 6 (11th Cir.1990) ("[The police officers] were not required to forego arresting [plaintiff] based on initially discovered facts showing probable cause simply because [plaintiff] offered a different explanation."); *Criss v. City of Kent,* 867 F.2d 259, 263 (6th Cir.1988) ("A policeman ... is under no obligation to give any credence to a suspect's story nor should a plausible explanation in any sense require the officer to forego arrest pending further investigation if the facts as initially discovered provide probable cause."); *Thompson v. Olson,* 798 F.2d 552, 556 (1st Cir.1986) ("[H]aving once determined that there is probable cause to arrest, an officer should not be required to reassess his probable cause conclusion at every turn, whether faced with the discovery of some new evidence or a suspect's self-exonerating ex-

planation from the back of the squad car."), *cert. denied,* 480 U.S. 908, 107 S.Ct. 1354, 94 L.Ed.2d 524 (1987); *cf. Baker v. McCollan,* 443 U.S. 137, 145–46, 99 S.Ct. 2689, 2695, 61 L.Ed.2d 433 (1979) ("[W]e do not think a sheriff executing an arrest warrant is required by the Constitution to investigate independently every claim of innocence, whether the claim is based on mistaken identity or a defense such as lack of requisite intent.").

4. Plaintiff alternately styles the alleged constitutional right as the right to a "reasonable", "adequate", or "sufficient" post-arrest investigation. For consistency, we refer to the alleged constitutional guarantee as the right to a "reasonable" post-arrest investigation.

Here, Plaintiff claims Defendants violated his Fourteenth Amendment right to a reasonable post-arrest investigation. Specifically, Plaintiff claims that Defendants violated his constitutional right to a reasonable post-arrest investigation by failing to contact his alibi witnesses and interview individuals who witnessed David Benavidez threaten and attempt to fight with David Douglas the night he was murdered.

The Fifth Circuit addressed similar facts in *Simmons v. McElveen*, 846 F.2d 337 (5th Cir.1988). In *Simmons*, the police arrested and imprisoned the plaintiff for armed robbery of a store. In the months after the arrest, the police failed to disclose exculpatory fingerprint evidence to the district attorney's office, and to conduct a physical line-up and fingerprint comparison of another suspect implicated through a "crime stoppers" program tip. *Id.* at 338. Ultimately, eight months after the arrest, the defendants released the plaintiff when his attorney located a witness who exonerated him and conclusively implicated the "crime stoppers" suspect. *Id.* at 339.

The plaintiff filed a § 1983 action against the police officers alleging that their insufficient post-arrest investigation violated his constitutional rights. The district court granted summary judgment in favor of the defendant officers. On appeal, the Fifth Circuit framed the issue as "whether the conduct of the defendants amounts to more than negligence thereby providing [plaintiff] with a 1983 cause of action." *Id.* The Fifth Circuit recognized that negligent actions by a police officer do not give rise to constitutional violations actionable under § 1983. *Id.* (citing *Daniels*, 474 U.S. at 333, 106 S.Ct. at 666). Although the defendants' post-arrest investigation was imperfect, the Fifth Circuit nonetheless ruled the defendant officers were entitled to summary judgment because "their conduct simply does not exceed the level of negligence." *Id.*

The facts alleged in the instant case compel a similar result. With the benefit of hindsight, it may have been fruitful for Defendants to investigate Plaintiff's alibi witnesses, or to attempt to contact individuals who witnessed David Benavidez threaten David Douglas. The essence of Plaintiff's argument, however, is that the police assumed a duty to conduct a post-arrest investigation which they performed poorly. Although Defendants may not have conducted their post-arrest investigation as efficiently as possible, their conduct as alleged by Plaintiff simply does not exceed negligence. Plaintiff has therefore failed to assert a constitutional violation at all. *Daniels*, 474 U.S. at 333, 106 S.Ct. at 666; *Simmons*, 846 F.2d at 339. The district court therefore erred in denying Defendants qualified immunity on Plaintiff's post-arrest investigation claim.

## III.

 Defendants next maintain the district court erred in denying Defendant Stover qualified immunity on Plaintiff's claim for a violation of his constitutional right to a sufficiently staffed police department. We agree.

Plaintiff contends Defendant Stover violated his constitutional rights by understaffing, underfunding, and overworking the Violent Crimes Unit of the Albuquerque Police Department, thereby rendering the post-arrest investigation of the charges against him constitutionally inadequate. Aplts.App. at 4–5. We have already concluded that Plaintiff failed to establish that the post-arrest investigation amounted to a constitutional violation because the alleged conduct did not exceed negligence. *See supra* part II. Thus, the conduct allegedly committed by Defendant Stover in staffing the Violent Crimes Unit *at most* contributed to a post-arrest investigation that did not amount to a constitutional violation. Defendant Stover's staffing of the Violent Crimes Unit, therefore, did not constitute a constitutional violation.[5] We conclude the district court erred in denying Defendant Stover qualified immunity on Plaintiff's insufficient staffing claim. *See Siegert*, 500 U.S. at 233, 111 S.Ct. at 1794.

---

**5.** We express no opinion whether the Fourteenth Amendment guarantees Plaintiff the right to a sufficiently staffed police department.

## IV.

Defendants next argue the district court erred in denying them qualified immunity on Plaintiff's false imprisonment claim. Specifically, Defendants contend Plaintiff failed to show that their refusal to release him when he repeatedly protested his innocence constituted false imprisonment. We agree.

"[F]alse imprisonment does not become a violation of the Fourteenth Amendment merely because the Defendant is a state official." *Baker*, 443 U.S. at 146, 99 S.Ct. at 2696; *see also Edwards v. Baer*, 863 F.2d 606, 607 (8th Cir.1988) ("The mere fact that an invalid arrest takes place does not ordinarily convert the common law tort of false arrest or false imprisonment to a violation of a constitutional right."). Indeed, a police officer does not commit false imprisonment merely by arresting an individual who happens to be innocent. *See Baker*, 443 U.S. at 145, 99 S.Ct. at 2695 ("The Constitution does not guarantee that only the guilty will be arrested."). Rather, a plaintiff states a claim for false imprisonment in violation of § 1983 by specifically alleging facts that show a government official acted with deliberate or reckless intent to falsely imprison the plaintiff. *See Webber*, 43 F.3d at 1342 ("[A] government official violates an individual's Fourteenth Amendment rights by injuring his or her life, liberty, or property interest with deliberate or reckless intent."); *Robinson v. Maruffi*, 895 F.2d 649, 657 (10th Cir.1990) (district court properly instructed jury that plaintiff could recover under § 1983 for false imprisonment where police officers deliberately obtained false testimony from prosecution witnesses in attempt to convict plaintiff); *Rex v. Teeples*, 753 F.2d 840, 842–43 (10th Cir.) (plaintiff stated claim for a § 1983 violation by alleging that police officer deliberately conspired with physician to have mental hold placed on plaintiff in order to improper-

ly detain and question plaintiff in criminal investigation), *cert. denied*, 474 U.S. 967, 106 S.Ct. 332, 88 L.Ed.2d 316 (1985).

In the instant case, Plaintiff alleges that Defendants falsely imprisoned him by conducting an inadequate investigation into the facts forming the probable cause to arrest him for the murder of David Douglas. Specifically, Plaintiff argues that Defendants falsely imprisoned him by: (1) refusing to release him when he repeatedly protested his innocence; (2) failing to investigate his alibi witnesses after the arrest; and (3) failing to contact the individuals who witnessed David Benavidez threaten David Douglas the night he was murdered.

We first reject Plaintiff's argument that Defendants falsely imprisoned him by refusing to release him when he maintained his innocence. Once Defendants' concluded that the initially discovered facts established probable cause, they were under no obligation to forego arresting Plaintiff or release him merely because he said he was innocent.[6] We believe the Supreme Court's observations in *Baker* regarding claims of innocence after an arrest supported by an arrest warrant apply by analogy to claims of innocence after a warrantless arrest:

> Given the requirements that arrest be made only on probable cause and that one detained be accorded a speedy trial, we do not think a sheriff executing an arrest warrant is required by the Constitution to investigate independently every claim of innocence, whether the claim is based on mistaken identity or a defense such as lack of requisite intent. Nor is the official charged with maintaining custody of the accused named in the warrant required by the Constitution to perform an error-free investigation of such a claim. *The ultimate determination of such claims of innocence is placed in the hands of the judge and the jury.*

6. *See Marx*, 905 F.2d at 1507 n. 6 ("[The police officers] were not required to forego arresting [plaintiff] based on initially discovered facts showing probable cause simply because [plaintiff] offered a different explanation."); *Criss*, 867 F.2d at 263 ("A policeman ... is under no obligation to give any credence to a suspect's story nor should a plausible explanation in any sense require the officer to forego arrest pending further investigation if the facts as initially discover-

ed provide probable cause."); *Thompson*, 798 F.2d at 556 ("[H]aving once determined that there is probable cause to arrest, an officer should not be required to reassess his probable cause conclusion at every turn, whether faced with the discovery of some new evidence or a suspect's self-exonerating explanation from the back of the squad car."), *cert. denied*, 480 U.S. 908, 107 S.Ct. 1354, 94 L.Ed.2d 524 (1987).

*Baker,* 443 U.S. at 145–46, 99 S.Ct. at 2695 (emphasis added). In light of the Court's recognition that the judicial system represents the proper forum in which to determine the innocence of an arrestee, Defendants' refusal to release Plaintiff when he maintained his innocence does not exhibit deliberate or reckless intent to falsely imprison him. Indeed, on the record before us we have reservations as to whether Defendants' conduct constituted negligence.

Moreover, we have already concluded that based on the facts alleged by Plaintiff, the manner in which Defendants conducted the post-arrest investigation of Plaintiff's alibi witnesses and the murder of David Douglas did not exceed negligence. *See supra* parts II, III. Thus, Defendants' failure to contact Plaintiff's alibi witnesses and the individuals who witnessed David Benavidez threaten David Douglas did not display deliberate or reckless intent to falsely imprison Plaintiff. We hold that Plaintiff has failed to allege facts in his complaint and response to Defendants' motion for summary judgment which show that Defendants acted with the deliberate or reckless intent necessary to support a § 1983 action for violation of his Fourteenth Amendment rights. Thus, the district court erred in denying Defendants qualified immunity on Plaintiff's false imprisonment claim. *Siegert,* 500 U.S. at 233, 111 S.Ct. at 1794.

### V.

■ Finally, Defendants contend the district court erred in denying them qualified immunity on Plaintiff's claim for malicious prosecution. We agree.

In order to determine if Defendants are entitled to immunity on Plaintiff's malicious prosecution claim, we first inquire whether Plaintiff has asserted the violation of a *constitutional* right. *Siegert,* 500 U.S. at 231–32, 111 S.Ct. at 1792–93; *Bisbee,* 39 F.3d at 1100. Neither Plaintiff's complaint or appellate brief identifies the constitutional due process theory underlying his § 1983 malicious prosecution claim. Instead, Plaintiff alleged in his complaint that Defendants "prosecuted Plaintiff, in violation of New Mexico law." Aplts.App. at 5–6. Thus, Plaintiff failed to allege that Defendants deprived him of a right "secured by the Constitution and laws." 42 U.S.C. § 1983; *see also*

*Collins v. City of Harker Heights, Tex.,* 503 U.S. 115, 120–21, 112 S.Ct. 1061, 1066, 117 L.Ed.2d 261 (1992) ("Section 1983 provides a remedy against any person who, under color of state law, deprives another of rights protected by the Constitution.") (quotations omitted).

We therefore hold that Plaintiff failed to allege in the malicious prosecution count of his complaint a violation of a federal constitutional right. *See Perez–Ruiz v. Crespo–Guillen,* 25 F.3d 40, 42–43 (1st Cir.1994) (district court properly dismissed § 1983 malicious prosecution claim where plaintiff failed to identify supporting constitutional due process theory). Thus, the district court erred in denying Defendants qualified immunity on Plaintiff's malicious prosecution claim. *Siegert,* 500 U.S. at 232, 111 S.Ct. at 1793.

### VI.

In conclusion, we hold the district court erred in denying qualified immunity to Defendants on each of Plaintiff's claims. We therefore REVERSE the district court's denial of summary judgment and REMAND with instructions to enter judgment in favor of Defendants.