**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**AUG 24 2001**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

ELLSWORTH TYRONE
JEFFERSON,

      Plaintiff-Appellee,

v.

DAVE WITT, individually and in his
official capacity as a police officer for
the City of Tulsa, Oklahoma,

      Defendant-Appellant,

   and

THE CITY OF TULSA,
OKLAHOMA, a municipal
corporation,

      Defendant.

No. 00-5171
(D.C. No. 99-CV-531-M)
(N.D. Okla.)

---

**ORDER AND JUDGMENT** *

---

Before **HENRY** , **PORFILIO** , and **MURPHY** , Circuit Judges.

---

*     This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel.  The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

Defendant-appellant Corporal Dave Witt appeals from the district court's denial of summary judgment in plaintiff-appellee Elsworth Tyrone Jefferson's civil action for violation of his Fourth Amendment rights brought pursuant to 42 U.S.C. § 1983. There is a single question on appeal: whether the facts and circumstances within Corporal Witt's knowledge (or of which he had reasonably trustworthy information) at the time of Mr. Jefferson's arrest were sufficient to lead a prudent police officer to believe Mr. Jefferson had conveyed a false bomb report in violation of state statute. We have jurisdiction under 28 U.S.C. § 1291, and, because the record contains undisputed facts showing that Corporal Witt could reasonably conclude that probable cause existed to arrest Mr. Jefferson, we reverse.

## I. Facts and proceedings

The undisputed facts in the record before us reveal the following. On August 30, 1998, Corporal Witt received a call from the 911 emergency dispatcher directing him to the Sheraton Hotel under a code indicating a bomb threat. The Sheraton's night manager, Mr. Harris, had called 911, stating, "my

-2-

security guard just called and said I needed to call you, that we have a stolen car running out by a building and he believes it is going to blow up." Aplnt. App. Ex. P at 124 (transcript of 911 tape). In response to the 911 complaint taker's request for more details, Mr. Harris stated, "[h]e says he just needs you out to the hotel . . . [i]t is going to blow up." *Id.* The 911 complaint taker typed "poss. device" in a stolen vehicle that "is going to blow up" in the 911 CAD printout. *Id.* at 120. The dispatcher then notified Corporal Witt that there was a "bomb threat, with the device in a vehicle in the parking lot with no time of detonation given." *Id.* at 150 (Corporal Witt's narrative incident report). Officers Kinney, Brisbin, Kennedy, and Neal also responded to the call.

When Corporal Witt arrived at the hotel, he found Mr. Jefferson standing near an automobile with the door open. *Id.* He instructed him to move away from the car and asked if that was the car with the bomb. Mr. Jefferson responded, "[t]here's no bomb. This is a stolen car." *Id.* When Corporal Witt continued to inquire about a bomb, Mr. Jefferson "kept asking if we were going to do anything with the stolen car." *Id.* When Corporal Witt asked if Mr. Jefferson "had called about a bomb[, ] he denied saying anything about a bomb . . . or having any knowledge of a bomb call." *Id.*

In Mr. Jefferson's presence, Corporal Witt then asked Officer Kinney to call dispatch to determine the origin of the call, for Officer Brisbin to interview

Mr. Harris to see why the call was reported as a bomb threat, and for Officer Kennedy to interview another employee-witness. The dispatcher stated, "[s]ecurity called it in." *Id.* 139 (transcript of dispatch conversation). When told that the callers said "they did not mention anything about a bomb," the dispatcher stated that security "said they had a vehicle in the parking lot that is stolen and it is going to blow up. I'm sure that is why the complaint takers thought it was possibly a device because of what [Mr. Harris] said." *Id.* at 139-40. According to Corporal Witt's report, Mr. Jefferson heard the dispatcher affirm that "security" had stated a car was going to blow up. *Id.* at 151. Corporal Witt's report stated that Mr. Jefferson then "said that he had told the manager to tell the dispatcher that there was a bomb in the car," and indicated that he "was unhappy with the response time of police to his call." *Id.* Officer Neal's incident report likewise stated that Mr. Jefferson explained that "he wanted [officers] to hurry up and respond faster. This is the reason he radioed to manager on duty to call in to report stolen car with bomb threat." *Id.* at 145; *see also id.* at 135 (deposition of Officer Neal).

According to Officer Kennedy's report, another employee who was standing with Mr. Jefferson when he was interviewed told Officer Kennedy that "he heard [Mr. Jefferson] tell the officers that he had told [the night manager] over the radio, there was a bomb in the car." *Id.* at 148-49. Although in his

deposition, Mr. Jefferson disputed that he used the word "bomb" or that he had admitted in the officers' presence that he had " *caused* the manager to call in the stolen car that was going to blow up," *Id.* Ex. Q at 214-15 (emphasis added), he never disputed the reports and testimony that he falsely told the manager the car was going to blow up because he wanted police to respond quickly.

Officer Brisbin's report stated that Mr. Harris told him that Mr. Jefferson told him by two-way radio the need to get hold of the police because "there is a bomb in [the car]." *Id.* Ex. P at 147. To corroborate the officer's report, Corporal Witt also submitted an affidavit from Mr. Harris. Mr. Harris confirmed that he had called 911 because Mr. Jefferson said "there is a car out front with a bomb or there is a car that is going to explode," and that Officer Brisbin's report correctly stated what he had told the officers. *Id.* at 105, 108; Ex. S at 242. Mr. Jefferson admitted at his deposition telling Mr. Harris that the car "seem[ed] like it's going to blow up," but then he added an allegation that smoke was emitting from the car, a claim never mentioned in his or any other witnesses' statements to officers at the time of the incident. *See id.* Ex. Q at 213.

After finishing his investigation and speaking with his officers, Corporal Witt determined that Mr. Jefferson had reported a false bomb threat for the purpose of quickening police response time to his stolen car report. *Id.* Ex. P at 151. He ordered Mr. Jefferson to be arrested for violating Oklahoma state law.

*Id.; see also id.* at 153 (arrest and booking data). The specific statute Mr. Jefferson was arrested for violating states, in pertinent part, that it is a felony for:

> *Any person who uses the telephone or other instrument to* willfully make any threat or *maliciously convey information known to be false, concerning an attempt or alleged attempt to* kill, injure or intimidate any person or *unlawfully damage any real or personal property by means of an explosive or simulated bomb, including an incendiary device.*

Okla. Stat. Ann. tit. 21 § 1767.1(A)(7) (emphasis added). Unfortunately, the district attorney filed a criminal information on September 2, 1998, against Mr. Jefferson for committing the crime of "BOMB THREAT BY TELEPHONE, a felony, by unlawfully, feloniously, willfully and maliciously . . . by use of a telephone, threaten[ing] to unlawfully damage the SHERATON HOTEL . . . by means of an explosive device." Aplnt. App. Ex. P at 164. For obvious reasons, the state dismissed the criminal prosecution on October 20, 1998.

After dismissal, Mr. Jefferson brought suit against Corporal Witt individually and in his official capacity as a police officer, claiming that Corporal Witt had violated his constitutional rights by arresting him without probable cause. Corporal Witt moved for summary judgment based on qualified immunity. Mr. Jefferson asserted, and the district court found, that Mr. Jefferson had been "*arrested* for the felony charge of *using a telephone* to *make* a bomb threat." *Id.* Ex. U at 266 (emphasis added). Based on this finding, the district court

-6-

concluded that Corporal Witt was not entitled to summary judgment on the issue of qualified immunity because a "fact finder could conclude that a reasonable officer could not conclude that probable cause existed to arrest Plaintiff." *Id.* at 268. The court noted that, taking the facts in the light most favorable to Mr. Jefferson, Mr. Jefferson had an honest belief that the car might explode, so a reasonable officer could not conclude that probable cause existed to arrest him. *Id.* at 269.

## II. Discussion

### A. Jurisdiction.

We must preliminarily satisfy ourselves that we have jurisdiction to review this interlocutory appeal.

> Orders denying qualified immunity before trial are appealable to the extent they resolve abstract issues of law. . . . A determination that under either party's version of the facts the defendant violated clearly established law is also immediately appealable. . . . An order denying qualified immunity on summary judgment is not appealable if it merely determines the facts asserted by the plaintiff are sufficiently supported in evidence in the record to survive summary judgment.

*Foote v. Spiegel*, 118 F.3d 1416, 1422 (10th Cir. 1997) (citations omitted). Because the facts upon which Corporal Witt relies for his claim of qualified immunity are not controverted and he challenges the legal standard used by the district court, we may resolve the issue of law before us.

-7-

**B. Probable cause.**

We review the denial of qualified immunity on summary judgment de novo. *Romero v. Fay*, 45 F.3d 1472, 1475 (10th Cir. 1995). Our analysis is two-pronged. First, we must ensure that Mr. Jefferson's allegations, if true, would sufficiently assert the violation of a constitutional right that was clearly established at the time Corporal Witt arrested him. *See id.* There is no question that, if Corporal Witt had arrested Mr. Jefferson without probable cause, he would have violated Mr. Jefferson's clearly-established Fourth Amendment right to be free from arrests made without probable cause.

Thus, we proceed to the second prong of the analysis, which is to analyze the constitutionality of Mr. Jefferson's arrest under the probable cause standard and determine whether Corporal Witt made a sufficient showing that no genuine issues of material fact remain to defeat his claim of qualified immunity. *See id.* at 1475-76. That inquiry requires an examination of the elements of the offense for which Mr. Jefferson was arrested and of the evidence in the record *of which Corporal Witt was aware* regarding Mr. Jefferson's conduct on the evening of his arrest. *See Hunter v. Bryant*, 502 U.S. 224, 228 (1991) (stating that arresting officers are entitled to qualified immunity if "at the moment the arrest was made . . . the facts and circumstances within their knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in

believing" that the arrestee had violated the law) (quotation omitted). "Even law enforcement officials who reasonably but mistakenly conclude that probable cause is present are entitled to immunity." *Romero*, 45 F.3d at 1476 (quotations omitted). As discussed below, the district court erred in failing to conclude that there were undisputed and sufficient trustworthy facts within Corporal Witt's knowledge at the time of the arrest upon which he could have reasonably believed that Mr. Jefferson had committed the crime for which he was arrested.

We first note that the district court misapprehended the reason Corporal Witt arrested Mr. Jefferson. As the italicized language of section 1767.1(A)(7) quoted above shows (and Corporal Witt pointed out to the district court, *see* Aplnt. App. Ex. R. at 234), one may violate the statute *either* by making a bomb threat *or* by maliciously conveying false information regarding a bomb threat. Clearly, Corporal Witt arrested Mr. Jefferson based upon his belief that the evidence indicated Mr. Jefferson had violated the latter prohibition even though the district attorney later misconstrued the evidence to prosecute Mr. Jefferson for the former prohibition.

Further, the district court erroneously considered Mr. Jefferson's post-event deposition statement that the car was smoking and he honestly believed that the car might explode. The court also apparently did not consider the uncontroverted record evidence showing what facts Corporal Witt had before him at the time of

the arrest in determining whether Corporal Witt had sufficient trustworthy evidence on which to base his belief that Mr. Jefferson had violated section 1767.1(A)(7).

Mr. Jefferson did not present any evidence that Corporal Witt was aware of his claim that the car was emitting smoke before he radioed Mr. Harris to call 911. A careful review of the record shows that, even though Mr. Jefferson alleged at his deposition that he told Mr. Harris that smoke was coming from the car, Mr. Harris did not relay that alleged statement to any officer the evening of the arrest even after the dispatcher asked him why security thought the car was going to blow up. *See id.* Ex. Q at 205, 213. It is uncontroverted that Corporal Witt knew that (1) 911 had received a call reporting that security said a stolen car was going to blow up; (2) Mr. Harris and another employee confirmed to officers that Mr. Jefferson told Mr. Harris by two-way radio that Mr. Harris needed to call 911 because there was a bomb in the car; [1] (3) Mr. Jefferson's alleged statement to Mr. Harris was false--there was no bomb; (4) Mr. Jefferson was standing next to the car and told Corporal Witt that there was no bomb soon after he arrived, indicating that he knew there was no danger of a bomb or of the car blowing up;

---

[1] It is not relevant whether Mr. Jefferson actually told Mr. Harris that there was a bomb in the car or whether he simply said the car was about to blow up because an officer need not ascertain the actual truth of a witness's statement before arrest - he must simply determine that the statement is reasonably trustworthy. *See Romero* , 45 F.3d at 1476.

-10-

(5) Mr. Jefferson initially denied having told Mr. Harris anything about a bomb but later admitted that he told him the car was about to blow up; and

(6) Mr. Jefferson was unhappy with the response time of police to his calls.

Under these undisputed facts, Corporal Witt could reasonably conclude that Mr. Jefferson had committed the felony of maliciously conveying false information regarding a bomb threat in violation of section 1767.1(A)(7).

The judgment of the United States District Court for the Northern District of Oklahoma is REVERSED and REMANDED for entry of judgment in favor of Corporal Witt on the issue of qualified immunity and for other proceedings consistent with this order.

Entered for the Court

John C. Porfilio
Circuit Judge

-11-