**F I L E D**

**UNITED STATES COURT OF APPEALS**

December 19, 2006

**FOR THE TENTH CIRCUIT**

RAMI COLWELL,

　　　　Plaintiff-Appellee,

v.

LESLIE JOHNSON, in her personal
capacity and under color of state law;
and TONY HALPAIN, in his personal
capacity and under color of state law,

　　　　Defendants-Appellants.

No. 06-2149
(D.C. No. CIV-05-450-WP/RHS)
(D. N.M.)

---

**ORDER AND JUDGMENT**[*]

---

Before **KELLY**, **LUCERO**, and **HARTZ**, Circuit Judges.

---

　　　　Defendants Leslie Johnson and Tony Halpain appeal the district court's

order denying their motion for summary judgment. We **AFFIRM** in part and

**DISMISS** in part.

---

[*] After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist the determination of
this appeal. See Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is
therefore ordered submitted without oral argument. This order is not binding
precedent except under the doctrines of law of the case, res judicata and collateral
estoppel. It may be cited, however, for its persuasive value consistent with Fed.
R. App. P. 32.1 (eff. Dec. 1, 2006) and 10th Cir. R. 32.1 (eff. Jan. 1, 2007).

While imprisoned at the Eddy County Detention Center ("ECDC"), Rami Colwell discovered that a prison guard, Mike Mitchell, was having an intimate physical relationship with another female inmate. In early September 2004, Colwell alleges that she told Sergeant Todd Halpain, a guard supervisor, what she had learned. Halpain denies any knowledge of Mitchell's affair and also denies having any conversation about that affair with Colwell. At least one guard testified in a deposition that Mitchell and Halpain were good friends and that other guards were aware of Mitchell's relationship.

Sometime on or around September 3, 2004, Colwell submitted a written statement accusing Mitchell of inappropriate behavior. Based on Colwell's accusation, ECDC personnel commenced an investigation into Mitchell's activities and reassigned him to another section of the facility. Warden Leslie Johnson was aware of this investigation. During the investigation, ECDC officials did not reassign Colwell to another facility or transfer her to a different cell, although these steps were taken in a prior case when an inmate accused a guard of misconduct.

On the evening of September 7, ECDC personnel were summoned by Colwell to her cell. When they arrived, they found her bound, gagged, and severely bruised in both her face and genital area. Colwell stated that she had been raped and beaten by at least two assailants, but was unable to identify them. One of the assailants, Colwell noted, told her "that she asked for it."

Colwell filed suit under 42 U.S.C. § 1983 against Johnson and Halpain, in both their individual and official capacities. She alleged that defendants violated her Eighth Amendment right to be free from "cruel and unusual punishment" because they failed to take reasonable steps to ensure her safety after she filed a written accusation against a prison guard. Defendants moved for summary judgment, arguing that they were entitled to qualified immunity for their actions and that Colwell failed to present sufficient evidence to support the municipal liability claim. The district court denied the motion, and this appeal followed.[1]

We review the district court's denial of qualified immunity de novo, making all reasonable inferences in favor of the non-moving party. Romero v. Fay, 45 F.3d 1472, 1475 (10th Cir. 1995). Summary judgment is inappropriate when, viewing the facts in the light most favorable to the non-moving party, there is a "genuine issue as to any material fact." Fed. R. Civ. P. 56(c).

Once a defendant asserts a defense of qualified immunity, plaintiff must (1) allege facts showing a violation of a constitutional right, and (2) show that the

---

[1] Defendants appeal both the district court's decision denying them qualified immunity and its finding that sufficient evidence existed to support the municipal liability claim. An order denying summary judgment is generally not appealable to this court, but "a district court's decision denying a government official qualified immunity, to the extent it turns on an issue of law, is an immediately appealable final collateral order." Kirkland v. St. Vrain Valley Sch. Dist. No. Re-1J, 464 F.3d 1182, 1188 (10th Cir. 2006). On appeal, our jurisdiction is limited to this issue, and thus we do not address the defendants' challenge to Colwell's municipal liability claim. See id.

right was clearly established at the time the defendant acted. Kirkland, 464 F.3d at 1188. It is well settled that the Eighth Amendment requires prison officials to "provide humane conditions of confinement," which includes taking "reasonable measures to guarantee the safety of the inmates." See Farmer v. Brennan, 511 U.S. 825, 832-33 (1994). A prison official violates this right when the inmate is imprisoned under conditions posing an objectively substantial risk of serious harm, and the official acted with "deliberate indifference" to the inmate's health or safety. Id. at 834; Verdecia v. Adams, 327 F.3d 1171, 1175 (10th Cir. 2003). An official exhibits "deliberate indifference" when she was subjectively aware of the substantial risk posed by the inmate's circumstances and failed to take reasonable steps to ensure her safety. Id.

Making all inferences in favor of Colwell, it is clear that a colorable claim under the Eighth Amendment was alleged. Because of Colwell's formal complaint, Mitchell was likely to be terminated (and he was in fact suspended, and notified of this suspension on September 8th). Halpain, Mitchell's close friend, was aware that Colwell was the informant and probably told Mitchell of this fact. During the investigation, Colwell was neither transferred to a more secure section of ECDC nor a new facility. In fact, the cell where she continued to be housed was located in a remote area of the prison and thus had fewer staff members assigned to monitor the inmates. Finally, although the prison had adopted general safety measures to ensure the security of all inmates, it was

-4-

possible for someone to gain access to Colwell's cell for the purpose of harming her.[2] On these facts, a jury could easily conclude that the defendants' failure to move Colwell to a new location placed her in a location posing an objectively substantial risk of harm.

A jury could also find that the defendants were aware of this risk and failed to take reasonable precautions to protect her. When ECDC officials were faced with a similar incident in 2001 – an inmate informed ECDC officials that a prison guard had sexual relations with a female inmate – that inmate was transferred to another facility. A jury could infer from this evidence that the defendants' were aware of the risk posed to an inmate in Colwell's circumstances, and that the defendants' actions were unreasonable because similar steps were not taken with respect to Colwell.

Defendants argue that they took reasonable steps to protect Colwell as a matter of law because she was placed in a cell located behind seven metal doors,

---

[2] Colwell submitted an affidavit from an expert in this field, Michael Hackett, who stated that ECDC's security system was not fail-safe, largely because the electronic locks on the metal doors were capable of being voided. Defendants argue that Hackett's testimony is false and unreliable because there is no evidence that the locks on the metal doors were voided by the assailants. If defendants are requesting that we look at post-incident evidence to determine whether Colwell was objectively secure, we note that Colwell was found bound, gagged, and beaten. Under defendants' analysis, it seems that there would be no question Colwell was placed in objectively dangerous conditions. Surely, she did not inflict these wounds on herself. To the benefit of the defendants, however, our review is limited to whether she was objectively safe based upon preexisting evidence.

all equipped with electronic locks requiring separate key cards, and was closely monitored. They further argue that they conducted a quiet investigation into her claim. The "steps" taken by the defendants, however, were no steps at all: During the investigation, Colwell remained in the same cell she was housed in when the complaint was filed, and the security identified by the defendants is the same security given to all inmates. The reasonableness of these measures is questioned by Halpain himself, who testified that he "absolutely" would have suggested moving Colwell to another facility if he was aware that Colwell had formally accused Mitchell. For purposes of this appeal, we assume that he had such knowledge. Moreover, Colwell's expert stated that keeping her in that cell was unreasonable. To the extent defendants emphasize the safety of Colwell's cell, this is a matter of dispute properly presented to a jury.

Accordingly, we **AFFIRM** the district court's order denying defendants' claim of qualified immunity, and **DISMISS** for lack of jurisdiction with respect to all other issues raised by defendants on appeal.

Entered for the Court


Carlos F. Lucero
Circuit Judge