**UNITED STATES of America, Appellee,**

v.

**Harold Ervin WANTLAND, Appellant.**

**No. 84–1591.**

United States Court of Appeals,
Eighth Circuit.

Submitted Sept. 17, 1984.

Decided Feb. 5, 1985.

James R. Cook, Cook & Waters Law Firm, Des Moines, Iowa, for appellant.

Richard C. Turner, U.S. Atty., Guy R. Cook, Asst. U.S. Atty., Des Moines, Iowa, for appellee.

Before McMILLIAN, JOHN R. GIBSON and BOWMAN, Circuit Judges.

PER CURIAM.

Harold Ervin Wantland appeals from his conviction, based upon a conditional plea of guilty, for armed robbery of a federally insured savings and loan association in violation of 18 U.S.C. § 2113(d) (1982). He argues that the district court[1] erred in denying his motion to suppress evidence seized following an investigatory stop of his motor vehicle. We affirm the conviction.

At 1:30 p.m. on October 13, 1983, a lone white male robbed the Citizens Federal Savings and Loan Association in Davenport, Iowa of $15,596.50 at gun point. He fled in a red 1983 Buick Century, Iowa license GHT 054. Within minutes of the robbery a police dispatcher sent a description of the robber and the getaway car to neighboring local law enforcement agencies. The robber was described as a white male, approximately five feet, eight inches tall and approximately thirty-five years old.

Illinois state trooper William Kauzlarich heard this transmission while patrolling an interstate highway and positioned his automobile near the Mississippi River Bridge to watch traffic entering Illinois.

Meanwhile, police officers obtained a more detailed description of the robber as having black hair and a black beard which appeared to be fake and as wearing a two-piece blue suit. They also found the red 1983 Buick Century abandoned in a parking lot close to the bank. An employee of the shopping mall in which the bank was located, Mr. McCarthy, informed the police that approximately two hours before the robbery he had seen a man who fit the description of the robber prowling around the parking lot trying to get into cars and that the man later had driven away in a gold 1971 Dodge Dart. McCarthy gave the license number, which he had written on his hand, to the police.

At 2:00 p.m. the police dispatcher transmitted this additional information about the robbery: the red 1983 Buick had been located; the suspect was believed to be driving a gold 1971 Dodge Dart, Illinois license 104–819; and the suspect was a white male, five feet, eight inches tall, wearing a two-piece blue suit and what appeared to be a fake black beard and black wig.

Trooper Kauzlarich heard this second transmission while watching traffic crossing the Mississippi River Bridge. Shortly thereafter he spotted and began to follow a gold 1971 Plymouth Duster being driven by a middle-aged white male with balding hair and no beard. There were no passengers in the car. Kauzlarich then contacted the police dispatcher and asked her to repeat the license number of the suspected getaway car. She stated that it was Illinois license number 104–819. He then informed her that he was following a gold Plymouth Duster, Illinois license number 104–849, and planned to make a stop.

After contacting other state troopers for assistance, Kauzlarich made the stop, ordered the driver, defendant/appellant Wantland, out of the automobile, and frisked him. Kauzlarich then searched the interior of the automobile, finding no weapons or evidence of a crime. Another trooper, after obtaining Wantland's consent, opened the trunk, where he found a bag containing a large amount of currency and a two-piece blue suit. Kauzlarich then placed Wantland under arrest and advised him of his constitutional rights.

Wantland was later indicted on one count of armed robbery in violation of 18 U.S.C. § 2113(d). His motion to suppress the evidence obtained from the automobile was

---

1. The Honorable William C. Stuart, Chief Judge, United States District Court for the Southern District of Iowa.

denied. Wantland then entered a conditional guilty plea, reserving the right to seek review of the denial of his motion to suppress. This appeal followed.

Wantland argues that Kauzlarich lacked a reasonable basis to make an investigatory stop of his automobile. First, he emphasizes that he did not fit the description of the robber as age thirty-five and five feet, eight inches tall with black hair and a black beard because at the time of the robbery he was age sixty-five and six feet tall with balding hair and no beard. Second, he notes that Kauzlarich had no information about what direction the getaway car was headed when it left the savings and loan association. Third, Wantland emphasizes that although the dispatcher identified the getaway car as a Dodge Dart, Illinois license number 104–819, the automobile stopped was a Plymouth Duster, Illinois license number 104–849.

■ We review the district court's factual findings and determinations concerning the circumstances justifying the stop of the vehicle under the clearly erroneous standard. *United States v. Danielson,* 728 F.2d 1143, 1144 (8th Cir.1984); and *United States v. Williams,* 714 F.2d 777, 779 (8th Cir.1983).

■ Law enforcement officers may stop a motor vehicle for investigatory purposes when they have a "reasonable, articulable suspicion that the person has been, is, or is about to be engaged in criminal activity." *United States v. Place,* 462 U.S. 696, 103 S.Ct. 2637, 2642, 77 L.Ed.2d 110 (1983). In determining whether there is reasonable, articulable suspicion to justify a particular stop, "the totality of the circumstances—the whole picture must be taken into account." *United States v. Cortez,* 449 U.S. 411, 417, 101 S.Ct. 690, 694, 66 L.Ed.2d 621 (1981). As the Supreme Court emphasized in *Terry v. Ohio,* 392 U.S. 1, 21–22, 88 S.Ct. 1868, 1879–1880, 20 L.Ed.2d 889 (1968), "[I]t is imperative that the facts be judged against an objective standard: would the facts available to the officer at the moment of the seizure or search 'warrant a man of reasonable caution in the belief' that the action taken was appropriate?"

■ The district court's findings and determination that Trooper Kauzlarich was justified in stopping Wantland's automobile are not clearly erroneous. When he made the stop, Kauzlarich knew that the vehicle's license number differed from the number given by the dispatcher by only one digit. He testified at the suppression hearing that it is common for witnesses who report license numbers to be a few digits off. While the dispatcher described the vehicle as a gold 1971 Dodge Dart and Kauzlarich stopped a gold 1971 Plymouth Duster, Kauzlarich testified that the car matched the description broadcast. There was no evidence in the record that the Dodge Dart and Plymouth Duster were dissimilar in appearance. The district court observed that the issues in connection with the identity of the car went to credibility. In addition, the robber was described as a white male wearing what appeared to be a fake black beard and wig. Wantland's differing appearance was not sufficient to deprive Kauzlarich of a reasonable basis for stopping the vehicles. In addition, although he had no information about which direction the robber was heading, Kauzlarich could have reasonably believed that since the robbery occurred in Iowa and the getaway car had an Illinois license plate, the robber might be headed for Illinois by way of the closest crossing point between the two states, the Mississippi River Bridge.

The district court concluded that the similarity of the car and the license plate to the description broadcast justified the stop. This determination is not clearly erroneous. *See Williams* and *Danielson, supra.*

Accordingly, we affirm the district court's denial of the motion to suppress, and affirm the conviction.