**UNITED STATES of America, Plaintiff,**

v.

**Nathaniel David WARD, Defendant.**

**Crim. No. 91–0069.**

United States District Court,
District of Columbia.

March 28, 1991.

Jiyoung Bang, Asst. U.S. Atty., Washington, D.C., for plaintiff.

Gregory Spencer, Washington, D.C., for defendant.

### MEMORANDUM

JUNE L. GREEN, District Judge.

This matter is before the Court on defendant Nathaniel David Ward's Motion to Suppress Physical Evidence and Statements and the government's opposition to the motion. At the motions hearing, Officer Oscar Garibay testified on behalf of the government. The defendant presented no evidence. For the reasons set forth below, the Court denies the defendant's motion to suppress.

### FACTS

Officer Garibay testified at the motions hearing that in the early morning of January 30, 1991, at approximately 3:40 a.m., he and his partner, Officer John Felenchak,

observed the defendant and a companion in a vehicle stopped at a stop light. According to Officer Garibay, Officer Felenchak remarked that the vehicle, a black Ford Mustang 5.0, matched the description of a vehicle reported to have been used in several armed robberies around the area.

The Officer testified that at the roll call the night before the defendant's arrest, the officers were told to be on the lookout for a new model, black Ford Mustang with District of Columbia plates, containing two black males suspected of committing several, recent armed robberies. Officer Garibay testified that the officers also had been advised that the suspects lived in the area he and Officer Felenchak were patrolling the night of the defendant's arrest.

Officer Garibay testified that because the car matched the description given in the lookout, he and Officer Felenchak decided to investigate the identity of the two individuals in the vehicle. Officer Felenchak turned on the police vehicle's emergency lights and pulled along side the Mustang. According to Officer Garibay, the Mustang immediately reversed and sped backward down the street. The officers pursued. Forty to fifty feet away, the Mustang halted. According to Officer Garibay, the defendant jumped out of the passenger side and ran into a cut between two buildings. Officer Garibay also departed his vehicle and chased the defendant on foot.

As he pursued the defendant, Officer Garibay stated that he observed Mr. Ward stop briefly behind a white van parked in back of the buildings. He said he saw the defendant pull a white-capped, medicine bottle from his jacket pocket and throw it under the van. Next, he saw the defendant remove his jacket and also discard it.

The officer testified that he pursued the defendant a short distance further. He stated that as the defendant rounded a corner he looked directly at Mr. Ward's face so he would be able to identify him later. Then, the officer stated, he returned to the white van to retrieve the medicine bottle and the defendant's jacket.

Officer Garibay testified that once he had retrieved the property discarded by the defendant, he flagged down a passing po-

lice cruiser and used their radio to broadcast a lookout for the defendant. Approximately four minutes later, Officer Garibay received word that a person matching the description in the lookout had been stopped one block away. Officer Garibay testified that he went to the area and made a face-to-face identification of the defendant. Mr. Ward then was arrested.

## ANALYSIS

The defendant argues that, under the Fourth Amendment, law enforcement officers must have probable cause for an arrest before initiating a stop such as the one attempted by Officers Garibay and Felenchak in stopping the black Ford Mustang 5.0. The defendant further contends that Officers Garibay and Felenchak did not have probable cause for an arrest when they initiated the stop of the Mustang. Because the physical evidence and defendant's statement were obtained as a result of an illegal and coercive police act, the defendant argues the evidence must be suppressed. The defendant also contends that even under an articulable suspicion standard, the evidence must be suppressed because the facts did not justify the stop.

The government contends that the Court must use the reasonable suspicion standard in judging the officers' attempt to stop the Mustang. Under this standard, the government argues, the Court should find the facts sufficient to create a reasonable suspicion warranting the stop. The government also argues that Officer Garibay's chase of the defendant was further justified by the defendant's actions in fleeing from the officers, and that the physical evidence was seized lawfully after it was abandoned by the defendant.

It is well-established that "law enforcement officers may stop a motor vehicle for investigatory purposes when they have a 'reasonable, articulable suspicion that the person has been, is or is about to be engaged in criminal activity.'" *United States v. Wantland*, 754 F.2d 268, 270 (8th Cir.,1985), *quoting United States v. Place*, 462 U.S. 696, 103 S.Ct. 2637, 77 L.Ed.2d 110 (1983). *See also United States v. Hensley*, 469 U.S. 221, 105 S.Ct. 675, 83 L.Ed.2d 604 (1985). However, the stop must be "rea-

**6**

sonably related in scope to the justification for its initiation." *Terry v. Ohio*, 392 U.S. 1, 29, 88 S.Ct. 1868, 1884, 20 L.Ed.2d 889 (1968). In determining the reasonableness of the stop, the Court must consider the totality of the circumstances. *United States v. Cortez*, 449 U.S. 411, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981).

▪ The circumstances under which Officers Garibay and Felenchak initiated an investigatory stop of the black Ford Mustang 5.0, in which the defendant was a passenger, were sufficient to create a reasonable suspicion of wrongdoing. The officers had been advised to look out for a new model, black Ford Mustang, with D.C. plates, containing two black men wanted in connection with several, recent armed robberies. The vehicle the defendant was riding in matched exactly the description given in the lookout. Furthermore, the officers first observed the vehicle and its occupants stopped in an area near where the robbery suspects were believed to be living. These facts, combined with the officers' knowledge that the area they were patrolling was a high-crime area, justified the officers' limited intrusion in attempting to stop the Mustang and its occupants.

In addition, the officers' initial actions were a minimal intrusion on the defendant's liberty. Officer Garibay testified that the officers' intention in stopping the Mustang initially was simply to identify its occupants and determine their connection, if any, to the robberies. The Court concludes that the officers' response was a legitimate reaction to a reasonable suspicion that the defendant and his companion were wanted for robbery. As the Supreme Court has stated, "(t)he Fourth Amendment does not require a policeman who lacks the precise level of information necessary for probable cause to shrug his shoulders and allow a crime to occur or a criminal to escape." *Adams v. Williams*, 407 U.S. 143, 145, 92 S.Ct. 1921, 1923, 32 L.Ed.2d 612 (1972). Officers Garibay and Felenchak merely attempted to prevent the departure and possible escape of individuals they reasonably suspected of criminal activity.

▪ The backwards flight of the Mustang up the street and the flight on foot of the defendant added to the officers' suspicions. Officer Garibay's pursuit of the defendant was justified in light of the defendant's actions.

▪ Once Officer Garibay recovered the medicine bottle discarded by the defendant and discovered illegal narcotics inside, the officers had probable cause for an arrest. Thus, the defendant's Fourth Amendment rights were not violated when he was seized by the officers. Nor does the defendant have standing to challenge the seizure of the medicine bottle or the jacket. In discarding these items, the defendant abandoned any expectation of privacy in his property. *Abel v. United States*, 362 U.S. 217, 241, 80 S.Ct. 683, 698, 4 L.Ed.2d 668 (1960); *United States v. Thomas*, 864 F.2d 843, 845–46 (D.C.Cir. 1989).

▪ The defendant also challenges Officer Garibay's on-the-scene identification of him as unnecessarily suggestive and a denial of due process. As the government indicates, the Court of Appeals has upheld repeatedly the identification procedures used by the officers in this case. *See e.g., United States v. Singleton*, 702 F.2d 1159, 1165–66 (D.C.Cir.1983); *United States v. Jones*, 517 F.2d 176, 179 (D.C.Cir.1975). Officer Garibay testified that during the pursuit of the defendant, he looked directly at Mr. Ward's face from approximately twenty feet away in order to identify Mr. Ward later. He further testified that the on-the-scene identification took place only a few minutes after his pursuit of the defendant ended. Given these facts, the Court concludes that the officer's identification of Mr. Ward was neither a denial of due process nor the product of an illegal arrest. Accordingly, there is no basis to suppress the identification.

## CONCLUSION

For the above stated reasons, the Court denies defendant Ward's motion to suppress physical evidence and statements.