**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**FEB 18 1997**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

      Plaintiff-Appellee,

v.

SALVADOR HINOJOS, JR.,

      Defendant-Appellant,

No. 96-5127

---

Appeal from the United States District Court
for the Northern District of Oklahoma
(D.C. No. 93-CR-33-E)

---

Submitted on the briefs:

Stephen C. Lewis, United States Attorney and Kenneth P. Snoke, Assistant United
States Attorney, Tulsa, Oklahoma, for Plaintiff-Appellee.

Stephen J. Knorr, Federal Public Defender and Stephen J. Greubel, Assistant
Federal Public Defender, Tulsa, Oklahoma, for Defendant-Appellant.

---

Before **SEYMOUR**, Chief Judge, **PORFILIO** and **MURPHY**, Circuit Judges.

---

**SEYMOUR**, Chief Judge.

---

Salavador Hinojos, Jr., appeals the district court's denial on remand of his motion to suppress evidence seized following a traffic stop. Mr. Hinojos was convicted of possession of drugs with intent to distribute and of possession of a firearm during and in relation to a drug offense. He appealed, contending, *inter alia,* that the trial court erred in denying his motion to suppress. This court held the initial stop to be valid, but remanded for further development of the record on the issue of the validity of additional questioning and detention unrelated to the stop. See United States v. Hinojos, No. 93-5242, 1996 WL 16823 (10th Cir. Jan. 18, 1996). The district court received additional evidence and again denied the motion to suppress. Mr. Hinojos appeals and we affirm.[1]

Mr. Hinojos was stopped for speeding by Oklahoma highway patrol trooper Paul Lankster, who was patrolling Interstate 44 in Tulsa County. Trooper Lankster had previously heard a police broadcast stating that two Hispanic men were transporting drugs in a teal-colored Chevrolet pickup, and providing the truck's tag number. As he continued patrolling, Trooper Lankster saw a speeding vehicle containing two men approaching him in the eastbound lane. He verified the speed with radar, made a U-turn and followed the truck, which matched the

---

[1]After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed. R. App. P. 34(a); 10th Cir. R. 34.1.9. The cause is therefore ordered submitted without oral argument.

vehicle described in the dispatch. After ascertaining that the truck's Texas tag number matched that given in the bulletin, Trooper Lankster stopped the truck and issued a speeding ticket to Mr. Hinojos, who was driving. Mr. Hinojos stated that he lived in Odessa, Texas, as shown on his driver's license, and was going to Illinois to work for a short time. While Trooper Lankster was in the process of preparing a speeding ticket, he questioned Mr. Hinojos about drug trafficking. He then asked for and received permission from Mr. Hinojos to search the truck. The search revealed a gun and a plastic bag containing one half pound of cocaine. A subsequent tip led to the discovery of twelve pounds of marijuana in the truck's spare tire. Mr. Hinojos moved to suppress the results of the search and the district court denied the motion, ruling that the consent was voluntary. Mr. Hinojos appealed, contending his consent was tainted because the stop was pretextual.

At the time of the first suppression hearing, the issue of pretext was relevant to determining the constitutionality of a traffic stop. See United States v.Guzman, 864 F.2d 1512, 1517 (10th Cir. 1988). By the time of the first appeal, however, Guzman had been overruled by United States v. Botero-Ospina, 71 F.3d 783 (10th Cir. 1995) (en banc), under which the presence of pretext no longer invalidates a traffic stop based upon an observed violation. Accordingly, we held in the first appeal that the initial stop was valid. We also held that Trooper

Lankster's detention and further questioning of Mr. Hinojos was proper only if justified by the bulletin. We pointed out that a Terry investigation in reliance upon a police bulletin is justified only if the bulletin itself is based on reasonable suspicion, see United States v. Hensley, 469 U.S. 221, 232-33 (1985), or is augmented by independent police corroboration, see Alabama v. White, 496 U.S. 325, 329-32 (1990). The testimony at the first suppression hearing was directed to the issue of pretext and was therefore not developed on this issue. That hearing did not reveal the source of the bulletin, describe the contents of the bulletin in any detail, or provide other information relevant to the reasonable suspicion inquiry. Consequently, we remanded to allow the district court to revisit the issue.

On remand, the district court held another hearing, at which Trooper Lankster testified that the broadcast described the vehicle as a 1992 teal green Chevrolet pickup truck occupied by two males and carrying a substantial amount of cocaine. The broadcast further advised that the truck had Texas tags, giving the tag number, that the truck was traveling from Odessa, Texas, giving the time that it had left, and that the truck would be heading eastbound on the Turner Turnpike.

The government also presented testimony from Dorsey Shannon, a former DEA agent, who had received the information about the truck from Kansas DEA

Agent Larry Nichols and had in turn asked the Oklahoma Highway Patrol to issue the bulletin to its troopers. Mr. Shannon testified Agent Nichols told him the information had come from an informant who had direct detailed knowledge about the truck, its illegal contents, and the names of its occupants. Mr. Shannon recalled that the basis of the informant's information was direct observation. Mr. Shannon testified that "my sense of it was that [Agent Nichols] believed the information was very reliable and I don't know if that was because the informant was claiming firsthand knowledge or whether it was based on some working relationship. I assumed it was based on a working relationship because he was getting the information by telephone from someone who was removed from Wichita, Kansas." Rec. vol. III at 16.

In Alabama v. White, 496 U.S. 325, the Supreme Court addressed the standard for determining when an informant's tip can provide reasonable suspicion. The tip in that case is very similar to the bulletin received by Trooper Lankster here; it described a vehicle in detail, identified the driver and her point of origin and destination, and stated that she would be in possession of drugs. See id. at 327. The tip in White was anonymous and the Court pointed out that an anonymous tip alone can rarely provide the reasonable suspicion necessary for a Terry stop because it seldom demonstrates the informant's honesty, reliability or basis of knowledge. See id. at 329. Significantly, the Court held that an

anonymous tip such as the one at issue there would not be sufficient to support a Terry stop without corroboration. Id. at 329-31. As in White, the tip here identified only the vehicle, its occupants, its origin and direction of travel. White compels the conclusion that if the tip in this case had been given to DEA Agent Nichols in Kansas anonymously, it would not be sufficient to support reasonable suspicion without corroboration.

The record reveals little about Agent Nichols' receipt of the tip because Agent Nichols did not testify. Mr. Shannon, who received the information from Agent Nichols and passed it on to the Highway Patrol, testified Agent Nichols told him the informant's information was based upon personal observation. Mr. Shannon further testified he felt Agent Nichols believed the information to be reliable. In addition, Mr. Shannon assumed the informant and Agent Nichols had a working relationship because the informant's tip was based on direct observation, presumably in Texas, and phoned in to Agent Nichols in Kansas. Mr. Shannon apparently believed an anonymous tipster would not phone a tip in to a Kansas agent about illegal activity observed in Texas. The district court did not decide whether, in light of the additional evidence presented at the second hearing, the tip itself provided reasonable suspicion, ruling instead that the tip had been sufficiently corroborated by Trooper Lankster. We agree with this conclusion.

Even if the tip standing alone were not reliable enough to establish reasonable suspicion, Trooper Lankster corroborated the reliability of the information. Reasonable suspicion is to be determined by considering the "'totality of the circumstances--the whole picture.'" White, 496 U.S. at 330 (quoting United States v. Cortez, 449 U.S. 411, 417 (1981)).

> Thus, if a tip has a relatively low degree of reliability, more information will be required to establish the requisite quantum of suspicion than would be required if the tip were more reliable. . . . [We must take] into account the facts known to the officers from personal observation, and giv[e] the anonymous tip the weight it deserve[s] in light of its indicia of reliability as established through independent police work.

Id. Although the corroboration here was supplied by the officer who relied on the bulletin rather than the officer who received the tip and initiated the bulletin, we have held under the "fellow officer" rule that law enforcement officers may pool their information and that reasonable suspicion is to be determined on the basis of the collective knowledge of all the officers involved. See United States v. Morgan, 936 F.2d 1561, 1569 (10th Cir. 1991). This rule applies to an officer's corroboration of information received by radio dispatch. See United States v. Cutchin, 956 F.2d 1216, 1217-18 ( D.C. Cir. 1992).

In White, the Court held that the anonymous tipster's description of the car, its occupant, and its location were not significant indicia of reliability in themselves because they were facts existing at the time the tip was called in that

anyone could have observed. They therefore did not show that the tipster had inside information about the presence of illegal activity. However, the Court did find significant the fact that the caller predicted the future conduct of the subject of the tip. 496 U.S. at 331-32. It was the tipster's ability to predict future behavior that demonstrated inside information and familiarity with the subject's affairs, and thus demonstrated reliability.

In the instant case, in addition to providing a detailed description of the vehicle and its occupants, the tip also predicted that the truck would leave Odessa, Texas, at a particular time and travel eastbound through the Tulsa area. Trooper Lankster observed that Mr. Hinojos' truck matched the description in the bulletin, and that Mr. Hinojos was acting as the bulletin had predicted. In our view, this corroboration provides adequate additional indicia of reliability, especially when considered together with the testimony concerning the source of the tip.

Accordingly, we AFFIRM Mr. Hinojos' conviction.