**Joshua D. MEINERT, Plaintiff,**

v.

**CITY OF PRAIRIE VILLAGE, KANSAS, Troy Johnson, James Neff, and James Harris, Defendants.**

No. 99–2014–JWL.

United States District Court,
D. Kansas.

Jan. 31, 2000.

---

Steven R. McConnell, McConnell & McMahon, Lenexa, KS, for Plaintiff.

Charles R. Brown, David B. Mitchell, J. David Bowers, Fields & Brown, Kansas City, MO, for Defendants.

### MEMORANDUM AND ORDER

LUNGSTRUM, District Judge.

Plaintiff Joshua Meinert filed this civil rights action against defendants alleging false arrest and imprisonment in violation of the Fourth Amendment. Presently before the court is defendants City of Prairie Village, Kansas, Troy Johnson, James Neff and James Harris' motion for summary judgment (doc. 18). Because defendants are entitled to qualified immunity for their actions which are the subject of this suit, for the reasons set forth in more detail below, defendants' motion is granted. Plaintiff's complaint is dismissed in its entirety.

### I. Facts

On the evening of January 14, 1998, while accompanying his daughters to a music lesson, Barry Vyskocil and his two daughters were harassed by three teenagers just outside the Toon Shop, a shop located in the Prairie Village Mall shopping center. The encounter ultimately ended after one of the male teenagers struck Mr. Vyskocil's vehicle with a flashlight he had been waving at Mr. Vyskocil during the confrontation. The teenager then returned to his car and left the scene.

Scott Mize, an employee of the shop in front of which the altercation occurred, telephoned the Prairie Village police department to report the incident. Mr. Mize described the person he had observed shouting at Mr. Vyskocil as a white male teenager, 5'8"–5'10" tall, weighing 140–160 pounds, who was wearing a dark blue and white winter jacket. Mr. Mize further described the assailant's car as a silver Mitsubishi, Kansas license plate number LYI–651. An initial dispatch bulletin was broadcast across police radio channels indicating that an aggravated assault and criminal damage to property complaint had just been reported as having occurred in the Prairie Village Mall shopping center parking lot and that the suspect was last seen driving a silver vehicle, Kansas license plate number LYI–651. A computer records check of the license number revealed that the car was a 1990 Mitsubishi and was registered to Jeff Goldsmith who resided at 7429 Reeds Lane, Overland Park, Kansas. This additional information was transmitted by the dispatcher shortly after the first bulletin.

In response to the initial dispatch, Officer Neff, who was patrolling the area, began driving toward the scene of the incident, and upon receipt of the second dispatch, Officer Neff began proceeding to the 7429 Reeds Lane address. While traveling in that direction, Officer Neff observed plaintiff's car, a grey Mazda MX–6 bearing Kansas license plate number LYP–671. Based on the similarity between the vehicle and license plate number identified in the police bulletin, the proximity of the vehicle to the Prairie Village Mall shopping center where the assault had taken place, and the vehicle's direction of travel, Officer Neff decided to stop plaintiff's vehicle. Officer Neff noticed that, upon pulling over to the side of the

road, plaintiff removed a stocking cap from his head.

After hearing the initial dispatch, Officer Harris, another Prairie Village law enforcement officer, traveled to the scene of the incident to interview the available witnesses. Based upon the information he learned at that time, Officer Harris issued an updated dispatch indicating that the suspect involved in the Toon Shop incident was wearing a blue and white winter coat and a blue stocking cap bearing a Nike emblem. Officer Harris further stated that the suspect was accompanied by two passengers, one male and one female.

At the scene of the stop, plaintiff identified himself as Joshua Meinert. Plaintiff's driver's license indicated that Mr. Meinert was nineteen years old, and listed his height as six feet[1] and his weight as 145 pounds. Mr. Meinert was wearing a blue and white winter jacket. Officer Neff examined the cap plaintiff had pulled off of his head at the time of the stop and determined that it was a blue stocking cap with a Nike symbol on it. Plaintiff was accompanied by one male passenger. Plaintiff explained that he had no knowledge of the incident involving Mr. Vyskocil and that he and his passenger were returning home from a music store in a different area of town.

Officer Neff radioed the police dispatcher and advised him that he had stopped a possible suspect in the Toon Shop incident. Eight minutes later, Officer Harris, accompanied by Mr. Vyskocil, arrived to the location of the stop. At this time, Mr. Meinert was standing outside of his car. While Mr. Vyskocil was seated in Officer Harris' vehicle, Officer Harris drove by Mr. Meinert twice. Mr. Vyskocil positively identified Mr. Meinert as the person who had threatened him in the parking lot of the Prairie Village Mall shopping center.

Following Mr. Vyskocil's on-the-scene identification, Officers Johnson,[2] Neff and Harris arrested Mr. Meinert and he was booked on charges of aggravated assault and criminal damage to property. Plaintiff was then transported to the Johnson County Jail where, pending the filing of formal charges by the Johnson County District Attorney, he spent the night. The following day, plaintiff was released on bond after the Johnson County District Attorney charged him with misdemeanor assault and criminal damage to property. On March 17, 1998, all charges against Mr. Meinert were dismissed.

## II. Legal Standard

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine issue as to any material fact" and that it is "entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In applying this standard, the court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Adler v. Wal–Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)). A fact is "material" if, under the applicable substantive law, it is "essential to the proper disposition of the claim." *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). An issue of fact is "genuine" if "there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way." *Id.* (citing *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505).

The moving party bears the initial burden of demonstrating an absence of a genuine issue of material fact and entitlement to judgment as a matter of law. *Id.* at 670–71. In attempting to meet that stan-

1. According to the declaration submitted with his papers, plaintiff alleges he is actually six feet, two inches tall, rather than six feet tall as shown on his driver's license.

2. At some point after Officer Neff's initial stop of plaintiff's vehicle and before Officer Harris' arrival to the scene, Officer Johnson arrived at the scene to serve as Officer Neff's "back-up."

dard, a movant that does not bear the ultimate burden of persuasion at trial need not negate the other party's claim; rather, the movant need simply point out to the court a lack of evidence for the other party on an essential element of that party's claim. Id. at 671 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)).

Once the movant has met this initial burden, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256, 106 S.Ct. 2505; see *Adler*, 144 F.3d at 671 n. 1 (concerning shifting burdens on summary judgment). The nonmoving party may not simply rest upon its pleadings to satisfy its burden. *Anderson*, 477 U.S. at 256, 106 S.Ct. 2505. Rather, the nonmoving party must "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant." *Adler*, 144 F.3d at 671. "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Id.*

Finally, the court notes that summary judgment is not a "disfavored procedural shortcut;" rather, it is an important procedure "designed to secure the just, speedy and inexpensive determination of every action." *Celotex*, 477 U.S. at 327, 106 S.Ct. 2548 (quoting Fed.R.Civ.P. 1).

## III. Discussion

### A. Qualified Immunity and Fourth Amendment Claims[3]

 ] The qualified immunity doctrine shields government officials from personal liability under § 42 U.S.C.1983 "unless their conduct violates 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Baptiste v. J.C. Penney Co., Inc.*, 147 F.3d 1252, 1255 (10th Cir.1998) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)). Where the defense of qualified immunity is raised, "the plaintiff bears the burden of (1) coming forward with sufficient facts to show that the defendant's actions violated a federal constitutional or statutory right and (2) demonstrating that the right violated was clearly established at the time of the conduct at issue." *Id.* In order to satisfy this burden, "the plaintiff must do more than identify in the abstract a clearly established right and allege that the defendant has violated it." *Id.* (quoting *Romero v. Fay*, 45 F.3d 1472, 1475 (10th Cir.1995)). Instead, the plaintiff is required to "articulate the clearly established constitutional right and the defendant's conduct which violated the right with specificity ... and demonstrate a substantial correspondence between the conduct in question and prior law...." *Romero*, 45 F.3d at 1475 (internal quotations omitted). If the plaintiff is unable to "demonstrate[ ] both that the defendant's conduct violated a federal right and the right was clearly established, the defendant must be granted qualified immunity." *Baptiste*, 147 F.3d at 1256. If, on the other hand, "plaintiff has sufficiently alleged the conduct violated clearly established law, then the defendant bears the burden, as a movant for summary judgment, of showing no material issues of fact remain that would defeat the claim of qualified immunity." *Walter v. Morton*, 33 F.3d 1240, 1242 (10th Cir.1994).

**3.** In their papers, defendants claim that plaintiff has indicated that he will not pursue his § 1983 claim against defendant City of Prairie Village, Kansas because he has failed to develop any evidence to support municipal liability under § 1983. *See Monell v. Department of Social Services*, 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611, (1978). Plaintiff does not address the issue in his response to defendants' motion for summary judgment. The court therefore deems any claims asserted against defendant City of Prairie Village, Kansas abandoned. *See Wesley v. Don Stein Buick, Inc.*, 42 F.Supp.2d 1192, 1195 n. 2 (D.Kan. 1999). Even if the claim were not considered waived, the court notes that the record is wholly devoid of any facts to support a § 1983 claim against the municipality in any event. Accordingly, summary judgment with respect to defendant City of Prairie Village Kansas is appropriate.

▮] Plaintiff claims that his January 14, 1998 arrest was unconstitutional because the arrest was effected without probable cause. The constitutionality of a warrantless arrest is analyzed under the probable cause standard. *Romero*, 45 F.3d at 1476 (citing *Beck v. State of Ohio*, 379 U.S. 89, 91, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964)). "A police officer may arrest a person without a warrant if he has probable cause to believe that person committed a crime." *Id.* (citing *Tennessee v. Garner*, 471 U.S. 1, 6–8, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985)). "Probable cause exists if facts and circumstances within the arresting officer's knowledge and of which he or she has reasonably trustworthy information are sufficient to lead a prudent person to believe that the arrestee has committed or is committing an offense." *Jones v. City and County of Denver*, 854 F.2d 1206, 1210 (10th Cir.1988). Where a warrantless arrest is challenged under § 1983, "the defendant arresting officer is 'entitled to immunity if a reasonable officer could have believed that probable cause existed to arrest' the plaintiff." *Romero*, 45 F.3d at 1476 (quoting *Hunter v. Bryant*, 502 U.S. 224, 228, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991)).

▮ It is well-settled that police/citizen encounters fall within one of three categories: "(1) consensual encounters which do not implicate the Fourth Amendment; (2) investigative detentions which are Fourth Amendment seizures of limited scope and duration and must be supported by a reasonable suspicion of criminal activity [the so-called *"Terry"* stop]; and (3) arrests, the most intrusive of Fourth Amendment seizures and reasonable only if supported by probable cause." *United States v. Hill*, 199 F.3d 1143, 1147 (10th Cir.1999) (citation omitted). In order to justify an investigative, *Terry*-type stop, "the officer need have only specific and articulable facts sufficient to give rise to reasonable suspicion that a person has committed or is committing a crime." *United States v. Muldrow*, 19 F.3d 1332, 1335 (10th Cir.1994) (citation omitted). To determine whether reasonable suspicion

exists to support an investigative detention, the court must "consider[ ] the 'totality of the circumstances—the whole picture.'" *United States v. Hinojos*, 107 F.3d 765, 768 (10th Cir.1997) (quoting *Alabama v. White*, 496 U.S. 325, 330, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990)). In assessing whether reasonable suspicion exists under the totality of the circumstances, "[c]ommon sense and ordinary experience are to be employed and deference is to be accorded to a law enforcement officer's ability to distinguish between innocent and suspicious actions." *United States v. De la Cruz–Tapia*, 162 F.3d 1275, 1277 (10th Cir. 1998).

▮] As a general rule, a law enforcement officer is entitled to rely upon the information contained in police bulletins or flyers to determine whether to conduct an investigatory stop. *United States v. Hensley*, 469 U.S. 221, 232, 105 S.Ct. 675, 83 L.Ed.2d 604 (1985); *see also, United States v. Swann*, 149 F.3d 271, 274 (4th Cir.1998) (*Terry* stop justified; officer stopped two suspects matching descriptions related by eyewitnesses); *see also United States v. Erwin*, 155 F.3d 818, 822 (6th Cir.1998) ("obviously, stopping Erwin was proper in light of the fact that both he and his vehicle matched the description given by the general police broadcast of a possible drunk or reckless driver"). Where the information contained in the police bulletin is not based upon an officer's personal knowledge, but instead from a civilian source, courts have traditionally drawn a distinction between anonymous tipsters and citizen informants. *See J.B. v. Washington County*, 127 F.3d 919, 929–30 (10th Cir.1997) (listing cases). It is unclear in the Tenth Circuit whether, absent independent corroboration of an anonymous source's tip, reasonable suspicion justifying a *Terry* stop may be established solely on the basis of the tipster's information, *see Hinojos*, 107 F.3d at 768, but the reliability of ordinary citizen eyewitnesses is generally presumed, and indeed is often viewed as enough to establish probable cause for an arrest. *Washington County*,

127 F.3d at 930 (citing *United States v. Decoteau*, 932 F.2d 1205, 1207 (7th Cir. 1991)); *see generally* 2 WAYNE LAFAVE, SEARCH AND SEIZURE: A TREATISE ON THE FOURTH AMENDMENT § 3.4(a), at 203–211 (3d ed.1996).

In his papers, plaintiff makes much of the discrepancies between the dispatch bulletins' description of the suspect and the plaintiff in this case. Indeed, the crux of plaintiff's claim is not that the information regarding the suspect in the Toon Shop incident was somehow unreliable or otherwise deficient, nor that the arresting officer was unentitled to rely upon it, but instead that defendant Neff's conduct in stopping a vehicle that did not precisely match the description contained in the dispatch bulletins was unreasonable. Although the court sympathizes with Mr. Meinert's plight and understands the appeal of his argument concerning the discrepancies, the court disagrees with the conclusion that plaintiff advocates.

■ In assessing whether reasonable suspicion existed to support an investigatory detention, courts may take into account the officer's training and experience. *United States v. Mendez*, 118 F.3d 1426, 1431 (10th Cir.1997) ("We make our determination with deference to a trained law enforcement officer's ability to distinguish between innocent and suspicious circumstances"). In his declaration, Officer Neff explained that, in his experience, descriptions given by eyewitnesses or victims are often imprecise, and that he therefore viewed the differences between the information broadcast by the dispatcher and the characteristics of plaintiff's vehicle as sufficiently trivial to justify a limited investigatory detention of Mr. Meinert. *See United States v. Wantland*, 754 F.2d 268, 270 (8th Cir.1985) (where suspect bank robber reported as driving gold 1971 Dodge Dart with Illinois license number

104–819, officer's stop of 1971 gold Plymouth Duster with Illinois license number 104–849 deemed constitutional; officer testified that witnesses' descriptions of vehicles are frequently somewhat inaccurate).

■ In light of the similarity between the plaintiff's car and the description of the assailant's vehicle as detailed in the police bulletins, the court concludes that Officer Neff had reasonable suspicion to believe that plaintiff had been involved in the reported criminal activity. Officer Neff was, therefore, entitled to conduct a brief, investigatory stop in order to confirm or dispel his suspicion. The court simply does not believe that the inconsistencies between the description of the suspect's car and the plaintiff's vehicle were so great as to render the decision to stop plaintiff's vehicle unconstitutional. Indeed, comparing the facts contained in the police bulletins to the facts observed by defendant Neff, it is clear that plaintiff's car was similar in color (grey versus silver), make (Mazda versus Mitsubishi), Kansas license plate number (LYP–671 versus LYI–651), and was spotted by Officer Neff within blocks of the scene of the assault only minutes after the incident was reported.[4] Under these circumstances, the court finds that the initial stop of plaintiff's vehicle was supported by reasonable suspicion and therefore justified under the principles governing investigative *Terry* stops.

In addition to the similarities between plaintiff's vehicle and the description of the assailant's car, the court concludes that the differences between the suspect's physical description and Mr. Meinert's physical appearance were sufficiently slight so as to further justify the investigative stop. Indeed, although Mr. Meinert was slightly taller than the general description of the suspect, like the suspect, Mr. Meinert was a teenaged male, who was wearing a blue

---

4. Although a subsequent police dispatch indicated that, in addition to the suspect driver, there were two passengers riding in the suspect's vehicle, defendants contend that the suspect had enough time to drop off the female passenger prior to Officer Neff's initial

stop of plaintiff's vehicle. Plaintiff has offered no facts to contradict this assertion, and thus the court accepts defendants' contention that such an event was at least possible under the facts of this case.

and white winter jacket,[5] and who was driving a car matching the general description of the assailant's vehicle. Moreover, the court further finds that Officer Neff's suspicion that plaintiff had been engaged in criminal activity was reasonably reinforced by his observation that, at the time of the stop, plaintiff removed his stocking cap, which, like the cap worn by the suspect, bore a Nike trademark symbol. Considering the totality of the circumstances and all of the facts with which Officer Neff was faced at the time of the stop, the court concludes that the plaintiff bore sufficient similarity to the dispatched information regarding the suspect's physical description, and that, as a result, Officer Neff's suspicion that Mr. Meinert was involved in the assault of Mr. Vyskocil was reasonable under the circumstances.

 Although plaintiff does not specifically raise the issue, the court next considers whether the detention of plaintiff pending Mr. Vyskocil's transport to the location of Mr. Meinert's vehicle constituted a violation of plaintiff's Fourth Amendment rights. To be constitutional, an investigative detention "must be justified at its inception and . . . must be 'reasonably related in scope to the circumstances which justified the interference in the first place.'" *United States v. Anderson*, 114 F.3d 1059, 1063 (10th Cir.1997) (quoting *Terry v. State of Ohio*, 392 U.S. 1, 20, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)). The length of the detention may not last "longer than necessary to confirm or dispel [the officer's] suspicions regarding" the criminal activity for which the investigative stop was initiated. *United States v. Soto–Cer-*

*vantes*, 138 F.3d 1319, 1323 (10th Cir. 1998).

 In this case, the court does not find that the detention of Mr. Meinert pending the arrival of the eyewitness and during the subsequent identification procedure was unreasonable. Instead, Officer Harris and Mr. Vyskocil arrived only eight minutes after the initial stop. Plaintiff offers nothing to dispute the defendants' contentions that the proximity of the victim to the location of Mr. Meinert's vehicle rendered the attempt to secure an on-the-scene identification the most reasonable manner by which to attempt to confirm or dispel Officer Neff's reasonable suspicion that Mr. Meinert was the person who allegedly assaulted Mr. Vyskocil. Indeed, plaintiff does not argue that the length of the detention was unreasonable, nor does he suggest that an alternative, less time-consuming means of investigation should have been employed by the arresting officers. As a result, there is simply no evidence on the record before the court that the defendants detained the plaintiff for more time than was reasonably necessary to investigate whether Mr. Meinert was the suspected assailant, and, therefore, the court concludes that the eight-minute delay until Mr. Vyskocil could be transported to the scene and the subsequent time that it took Mr. Vyskocil to complete the "show-up" identification was constitutionally acceptable under the facts of this case.

It is undisputed that, once there, Mr. Vyskocil positively identified Mr. Meinert as his attacker. In his papers, plaintiff appears to contend that Mr. Vyskocil's identification was somehow unacceptable.[6]

---

5. In his papers, plaintiff points out that, whereas the suspect was described as wearing a blue winter coat with white trim, Mr. Meinert was wearing a winter coat that was blue on the top and white on the bottom. The court does not find this additional discrepancy sufficiently significant to render Officer Neff's decision to detain plaintiff unconstitutional under all the circumstances.

6. In the section of his brief entitled "Material Facts as to which a Genuine Issue Exists," plaintiff states that "[t]he Officers used inap-

propriate tactics in a[sic] attempt to obtain an eye witness [sic] identification of the Plaintiff by the victim." Pl.Mem. in Opp. at 3, ¶ 11. As support for this statement, plaintiff refers the court to Mr. Meinert's declaration in which Mr. Meinert states that "I was not asked by the officers to stand still on the sidewalk and face 75th street [sic] for an identification," Meinert Dec. at ¶ 9, and to a similar statement by the passenger in Mr. Meinert's vehicle at the time of the incident. Plaintiff does not elaborate upon, nor even address this statement in the argument sec-

Although it is unclear on precisely what grounds plaintiff challenges the identification procedure utilized in this case, assuming that plaintiff believes that Mr. Vyskcocil's view of Mr. Meinert during the identification procedure was obstructed or otherwise impaired because Mr. Meinert was not facing the street but was instead standing with his hands resting on his vehicle, plaintiff has failed to offer any evidence to substantiate such a claim. Indeed, the court is unable to discern, and plaintiff wholly fails to provide, any facts or authority to indicate how or why the on-the-scene identification procedure was inadequate or effected in such a manner as to encroach upon plaintiff's constitutional rights. Plaintiff has not argued that the procedure was unduly suggestive or that it was in any way violative of plaintiff's constitutional rights, and the court does not believe that such an argument would be successful in any event. *See, e.g., United States v. King*, 148 F.3d 968, 970 (8th Cir.1998) ("Police officers need not limit themselves to station house line-ups when an opportunity for a quick, on-the-scene identification arises. Such identifications are essential to free innocent suspects and to inform the police if further investigation is necessary."); *United States v. Jones*, 84 F.3d 1206, 1210 (9th Cir.1996) (although "circumstances of the drive-by identification were clearly suggestive," curbside identification of robber constitutional); *United States v. Funches*, 84 F.3d 249, 254 (7th Cir.1996) ("In our view, such considerations will justify a show-up in a limited number of circumstances, such as where the police apprehend a person immediately after the crime and in close proximity to the scene").

▉ In the absence of any facts indicating how or why Mr. Vyskocil's on-the-scene identification was inadequate or otherwise improper in this case (other than, of course, the fact that Mr. Vyskocil failed to identify the true assailant and Mr. Meinert was the unfortunate victim of a mistaken identification), the court believes that, as a result of Mr. Vyskocil's positive identification of Mr. Meinert as the suspect, a reasonable police officer could have determined that probable cause existed to arrest the plaintiff in this case.[7] That it was ultimately discovered that Mr. Meinert was not involved in the Toon Shop incident does not mean that the officers in this case are not shielded by qualified immunity. Indeed, it is a well-settled tenet of § 1983 law that "[e]ven law enforcement officials who 'reasonably but mistakenly conclude that probable cause is present' are entitled to immunity." *Romero*, 45 F.3d at 1476. The court does not doubt that Mr. Meinert's erroneous arrest and subsequent overnight jail stay was unpleasant and may have caused Mr. Meinert some degree of emotional distress. The United States Constitution does not, however, "guarantee that only the guilty will be arrested; [i]f it did, § 1983 would provide a cause of action for every defendant acquitted—indeed, for every suspect released." *Baker v. McCollan*, 443 U.S. 137, 145, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979).

For all of the reasons set forth above, the court concludes that plaintiff has failed

---

tion of his brief, however, and the court can therefore only speculate with respect to plaintiff's objections to the identification procedure utilized in this case.

7. The court notes that, in his papers, plaintiff appears to challenge Mr. Vyskocil's identification as inadmissible hearsay, and thus contends that it should be stricken from the record. This contention is wholly without merit, however. Mr. Vyskocil's statement is not offered for the truth of the matter asserted (i.e., as proof of Mr. Meinert's guilt); instead, the statement is offered only to establish defendants' reason for arresting Mr. Meinert (i.e., because the victim positively identified Mr. Meinert as his attacker). As such, the statement is not hearsay and is properly considered by the court.

to carry his burden to establish that the defendants in this case violated his clearly established constitutional rights. Indeed, the facts on the record before the court indicate that Officer Neff properly developed reasonable suspicion to investigate based on the information transmitted in the police bulletins, and that Officers Neff, Johnson, and Harris properly developed probable cause to arrest plaintiff for aggravated assault and criminal damage to property during the ensuing investigation.[8] Accordingly, defendants Johnson, Neff, and Harris are entitled to summary judgment with respect to plaintiff's § 1983 false arrest claim on the basis of qualified immunity.

**IT IS THEREFORE BY THE COURT ORDERED THAT** defendants' motion for summary judgment (doc. 18) is GRANTED. Plaintiff's complaint is dismissed in its entirety.

---

**8.** Under Kansas law, an officer may arrest a suspect without a warrant if he or she has probable cause to believe that a felony has been committed, KAN.STAT.ANN. § 22–2401(c)(1), or that a misdemeanor has been committed if "the law enforcement officer has probable cause to believe that: (A) The person will not be apprehended or evidence of the crime will be irretrievably lost unless the person is immediately arrested; (B) the person may cause injury to self or others or damage to property unless immediately arrested; or (C) the person has intentionally inflicted bodily harm to another person," KAN.STAT.ANN. § 22–2401(2)(A), (B), and (C). Plaintiff argues that, because the Johnson County District Attorney ultimately decided to charge Mr. Mei-

nert with simple assault, a misdemeanor, as opposed to felonious aggravated assault, the charge with which plaintiff was arrested and booked at the police station, plaintiff's arrest was unconstitutional. Plaintiff has offered nothing to dispute Officer Neff's sworn statement that he believed that, because the suspect involved in the Toon Shop incident had waved a twelve-inch metal flashlight at Mr. Vyskocil in a threatening manner, the appropriate charge against the person identified as Mr. Vyskocil's attacker was aggravated, as opposed to misdemeanor, assault. As a result, the fact that the Johnson County District Attorney later chose to reduce the charge to simple assault has no bearing on the constitutionality of plaintiff's arrest.