**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**May 19, 2006**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

       Plaintiff-Appellee,

v.

AHMED MOHAMMED-
ABDULLAH-OMAR AL-HAJ,

       Defendant-Appellant.

No. 05-3187
(D.C. No. 03-CR-40100-SAC-4)
(D. Kan.)

**ORDER AND JUDGMENT**[*]

Before **EBEL**, **McKAY** and **HENRY**, Circuit Judges.

Ahmed Al-Haj conditionally pleaded guilty to unlawful possession of pseudoephedrine and was sentenced to 210 months in prison. He reserved the right to appeal the district court's denial of his motion to suppress evidence discovered during the stop of his car, and now appeals that denial. We affirm.

---

[*]After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. See Fed. R. App. P. 34(f) and 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This Order and Judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

# I. BACKGROUND

At about 3:15 pm on May 20, 2003, Jerrett Ranieri of the Kansas Highway Patrol noticed three vehicles traveling "within four or five car lengths of each other" in the right-hand lane of I-70. This indicated to Ranieri "that maybe they were traveling together." The first vehicle was a black Chevy Tahoe that Ranieri thought had a Michigan license plate, the middle vehicle was a black van, and the third vehicle was a red pickup truck with Ohio license plates. Ranieri stopped the van because it had no visible license plate or registration, although he eventually saw a temporary Michigan registration in the "extremely dark" tinted rear window. The van's driver, Concepcion Ledesma, denied that she was traveling with the Tahoe or the red pickup. Ranieri became suspicious while talking to Ledesma and her female passenger, so after returning their licenses and other documents, he asked for and was given consent to search the van.

Trooper Andrew Dean joined Ranieri in the search, which revealed approximately 332 pounds of pseudoephedrine in hidden compartments. The troopers arrested Ledesma and her passenger and had the van taken back to the police department for a more thorough search. Dean also called Kelly Schneider, a local deputy sheriff, and told him of the drug find. He told Schneider to be on the lookout for the Tahoe and the red pickup.

During the search of the van at the police department, Ledesma's cell phone rang several times; the display on the phone showed the caller as Anwar

Yaffai.[1]  Based on a registration check that had been run on the red pickup, Dean recognized Yaffai's name as the name of the pickup's owner.  A search of Ledesma's purse also revealed a pay stub made out to Anwar Yaffai.  After discovering the pay stub, Dean called Schneider a second time and told him to stop the red pickup and to arrest Yaffai if he was in it.

At about 5:45 pm, Schneider located the pickup and the Tahoe, which were still traveling on I-70, about 100 yards apart.  Schneider requested a registration check on the Tahoe and found that it was registered to Ahmed Al-Haj of Michigan.  Schneider relayed this information to Dean, who responded that they had found "documentation" — a little black book with names and phone numbers — in the van listing the name "Ahmed" and a telephone number.  Dean also told Schneider that he believed the three cars were all together.

Schneider had another officer stop the red pickup while Schneider stopped the Tahoe.  The other officer arrested the driver of the pickup, who was identified as Anwar Yaffai.  A subsequent search of the pickup revealed 198 pounds of pseudoephedrine hidden in false compartments.  Yaffai's wallet also had a piece of paper with the name "Ahmed" and a phone number written on it.

Meanwhile, the driver of the Tahoe handed Schneider a Michigan driver's license identifying himself as Ahmed Al-Haj.  Schneider ran a check on the license, but was told that dispatch could not find a record of a driver's license for

---

[1]The record and briefs sometimes spell the last name "Yaffi."

Mr. Al-Haj. Schneider also spoke with Mr. Al-Haj's female passenger, who identified herself as Christie Jacobs, but who was "extremely nervous" and had "a very difficult time" spelling the last name she gave (it was later determined that she had given a false name). Mr. Al-Haj consented to a search of the Tahoe, which did not reveal any drugs. He denied that he was traveling with Yaffai.

Mr. Al-Haj was indicted on multiple drug charges. He moved in the district court "to suppress as evidence the property and other material discovered during the stop of his car" and "to suppress as evidence any statements made to police during the stop." The district court denied the motion and Mr. Al-Haj ultimately pleaded guilty to a violation of 21 U.S.C. § 841(c)(2): possession of pseudoephedrine that he knew or had reasonable cause to believe would be used to manufacture methamphetamine. His guilty plea was conditional, reserving the right to appeal denial of his suppression motion. The district court sentenced him to 210 months in prison, and he timely appealed.

## II. DISCUSSION

### A. Standard of review

On appeal, Mr. Al-Haj's sole claim is that the district court erred in denying his motion to suppress evidence arising out of the stop of his vehicle.

> When reviewing a district court's denial of a motion to suppress, we consider the totality of the circumstances and view the evidence in a light most favorable to the government. We accept the district court's factual findings unless those findings are clearly erroneous. The credibility of witnesses, the weight to be given evidence, and the

reasonable inferences drawn from the evidence fall within the province of the district court. Keeping in mind that the burden is on the defendant to prove that the challenged seizure was illegal under the Fourth Amendment, the ultimate determination of reasonableness under the Fourth Amendment is a question of law reviewable *de novo*.

United States v. Long, 176 F.3d 1304, 1307 (10th Cir. 1999) (citations omitted).

**B. Analysis**

A traffic stop is a "seizure" within the meaning of the Fourth Amendment, and we review such a stop under the principles set forth in Terry v. Ohio, 392 U.S. 1 (1968), because it is analogous to an investigative detention. See United States v. Hunnicutt, 135 F.3d 1345, 1348 (10th Cir. 1998). Thus, in evaluating a traffic stop, one issue is "whether the officer's action was justified at its inception." Terry, 392 U.S. at 20. Mr. Al-Haj argues that the stop of his vehicle was not so justified.

"In order to conduct a lawful investigatory stop of a vehicle, the detaining officers must have, based on all the circumstances, 'a particularized and objective basis for suspecting the particular person stopped of criminal activity.'" United States v. Leos-Quijada, 107 F.3d 786, 792 (10th Cir. 1997) (quoting United States v. Cortez, 449 U.S. 411, 417-18 (1981)). In other words, the officer must have a "reasonable articulable suspicion" that the person stopped is engaged in criminal activity. "That level of suspicion is considerably less than proof of wrongdoing by a preponderance of the evidence." United States v. Sokolow, 490 U.S. 1, 7 (1989). We have also held that "reasonable suspicion is to be determined on the

basis of the collective knowledge of all the officers involved." United States v. Hinojos, 107 F.3d 765, 768 (10th Cir. 1997); see also United States v. Cervine 347 F.3d 865, 871 (10th Cir. 2003).

We conclude that in this case, there was sufficient evidence at the time of the stop to reasonably suspect Mr. Al-Haj of engaging in criminal activity. First, Officer Ranieri had observed the three cars in the same lane "in real close proximity, within four or five car lengths of each other." He therefore suspected, or had a "hunch," that the three cars were traveling together.

Second, approximately two and one half hours after Ranieri first observed the three vehicles, Officer Schneider located the red pickup and the Tahoe, 125 miles away, still traveling within about 100 yards of each other. This indicated that the pickup was likely associated with the Tahoe. And, the officers had already determined that the pickup was associated with the van containing pseudoephedrine: Yaffai, the owner of the pickup, called Ledesma's cell phone multiple times and Ledesma had Yaffai's pay stub in her purse.

Third, Mr. Al-Haj, Ledesma, the Tahoe, and the van all had ties to Michigan and the Detroit area. Officers knew that the van had a temporary Michigan registration and that Ledesma had a Michigan driver's license. Ledesma also told the officers that she was traveling from Detroit to Los Angeles. Similarly, officers knew before stopping the Tahoe that it had Michigan license

plates and that it was registered to Mr. Al-Haj, a resident of Dearborn, Michigan — a suburb of Detroit.

Fourth, Ledesma's little black book contained a page with the name "Ahmed" and several phone numbers written on it.

Fifth, Ranieri agreed, based on his training and experience, that it is unusual to see "two females with this quantity of contraband traveling by themselves." He stated that instead, typically "they run an escort vehicle with them to make sure that the narcotics are received at their destination."

Although each of these factors viewed in isolation may not raise a reasonable suspicion of criminal activity, and although each could be consistent with innocent activity, in the aggregate we conclude that they meet the requisite standard.

> [A]n officer's specific articulable facts, when viewed in isolation, will often comport with general notions of innocent travel rather than criminal activity. . . . Our task, however, is not to pigeonhole each purported fact as either consistent with innocent travel or manifestly suspicious. Rather, the reasonable suspicion calculus turns on whether the specific articulable facts, when viewed together through the lens of a reasonable law enforcement officer, justified a brief roadside detention . . . .

United States v. Lopez-Martinez, 25 F.3d 1481, 1484 (10th Cir. 1994).

### III. CONCLUSION

For the foregoing reasons, we AFFIRM the denial of Mr. Al-Haj's suppression motion.

ENTERED FOR THE COURT

David M. Ebel
Circuit Judge